# CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT

OF THE

## STATE OF WISCONSIN.

### KELLOGG and others vs. FANCHER and others.

COMMERCIAL LAW. — *When holder of negotiable note protected.*—LIS PENDENS : *In case of commercial paper, who bound to take notice.*—*Whether there is constructive notice before complaint filed.*

1. One who takes a negotiable note in extinguishment of an antecedent indebtedness is protected as a holder for value.

2. One who takes, in payment of the individual note of A for his private debt, notes of third parties running to A, but which are in fact the property of a copartnership of which A is a member, is protected as a *bona fide* holder for value, if he was ignorant of the existence of such copartnership.

3. In case of commercial paper not due, persons not having *actual* notice are not bound to take notice of any pending suit affecting it. Otherwise, if it is past due.

4. Persons are not chargeable with *constructive* notice of an action after *service* of the summons and complaint and accompanying papers, but *before* any papers have been *filed ;* nor will the *subsequent* filing render them chargeable from the time of such service. So *held*, where an *injunctional order* was served with the summons and complaint.

APPEAL from the Circuit Court for *Racine* County.

This action was commenced by *Leverett S. Kellogg* against *James H. Fancher*, *Edgar H. Kellogg* and one *Starkweather*. The complaint averred that in June, 1860, at Kenosha city, the plaintiff and said *Fancher* and *Edgar H. Kellogg* entered into a mercantile business as copartners, under the firm name of " James H. Fancher," and continued therein until October, 1861, when they discovered themselves to be insolvent, and the copartnership ceased by a sale of the stock in trade, for which they received notes; that the claims of the firm against customers were in the hands or under the control of *Fancher*, who, without plaintiffs' knowledge or consent, about October 11, 1861, placed in *Starkweather's* possession, notes and accounts of the firm to the amount of $2,000, for *Starkweather* to collect and to pay out of the proceeds certain notes given by *Fancher* on his private account to M. B. Miller and Rachel Miller, amounting to $1,400; and that in case of such diversion of the funds, the said firm would be insolvent. The plaintiff therefore brought the action in his own name and those of any creditors who might choose to come in, etc., and sought to restrain the defendants from selling, collecting, etc., any property, claims or demands of said firm; and also asked for the appointment of a receiver, for an accounting, and for general relief. The summons and complaint, and an injunctional order founded thereon, were served on each of the above named defendants, November 6, 1861. On the 11th of the same month, the complaint was amended, and *M. B.* and *Rachel Miller*, *Farr*, *Moore* and *West* were made defendants, and the summons, complaint and injunctional order served on them. The amended complaint further alleged that after the 1st of November, 1861, *Fancher* placed in the hands of *M. B. Miller* and *Rachel*, his wife, three notes belonging to the firm of " James H. Fancher," — one made by *Farr & Moore*, for $500, dated in October, 1861, and payable in June, 1862; the other two, for

$400 each, made by *West* to one Grant, dated in 1856; that said three notes were worth between $1,400 and $1,500; that *M. B.* and *Rachel Miller* claimed to apply them on a previously existing demand they had against *Fancher* individually, and neither of them had advanced to *Fancher* any value therefor. The same relief was sought against the *Millers* as against the other defendants; and there was a further prayer, that *Farr*, *Moore* and *West* might be restrained from paying their notes above mentioned to any person except the receiver to be appointed herein; and that, if the *Millers* had collected or transferred said notes, they should be adjudged to pay the value thereof into court, etc., etc. Subsequently, various creditors of the firm of "James H. Fancher" became parties plaintiff.

The facts relied on by the *Millers* as a defense, and established by the evidence, will sufficiently appear from the opinion of Mr. Justice DOWNER. The circuit court found that there was a partnership as alleged, and decreed an accounting between the partners, the appointment of a receiver, etc., and that the injunction should be continued in force as to *Fancher* and *Edgar H. Kellogg*; but it further found that the *Millers* were *bona fide* holders of said notes for a valuable consideration, and ordered that the injunction be dissolved and the action dismissed as to them and all the other defendants except the two above named. From the latter part of the judgment plaintiffs appealed.

*J. J. Pettit*, for appellants, argued that *Fancher* received nothing from the *Millers* for the three notes which he transferred to them, because, by indorsing those notes, he continued his liability, and kept the old debt against him in being. *Seymour v. Wilson*, 19 N. Y. 418; *Snyder v. Wright*, 13 Wis. 691; Story on Prom. Notes, §§ 476–489, and notes. Receiving a note as security for a pre-existing debt does not give the right of a *bona fide* holder for value. *Wardell v. Howell*, 9 Wend. 172–175, and cases there cited; *Rosa v. Brotherson*, 10

id. 85; *Payne v. Cutler*, 13 id. 605. To protect the holder of the note, some advance must be made upon it; some new con sideration must be paid or responsibility incurred on its credit. *Bond v. Wiltse*, 12 Wis. 614; *Hughes v. Wheeler*, 8 Cow. 77, 1 Hill, 516; 5 id. 448; *Emerick v. Sanders*, 1 Wis. 92; 14 id. 4. 2. To the point that the *lis pendens* was constructive notice to all the world, counsel cited *Houghton v. Mariner*, 7 id. 251; 14 id. 350; 1 Story's Eq. Jur. §§ 405, 406, and notes; *Edgell v. Haywood*, 3 Atk. 352; *Murray v. Lylburn*, 2 Johns. Ch. 445; *Hopkins v. McLaren*, 4 Cow. 678, 679; *Utica Ins. Co. v. Power*, 3 Paige, 366, 368; 1 McCord Ch., 264; *Bennet v. Williams*, 5 Ham. 462; *Watlington v. Howley*, 1 Desauss. 167 and note, 170; *Tongue v. Morton*, 6 Har. & J. 21; *Matter of Hemiup*, 2 Paige, 319; *Mead v. Merritt*, id. 404; *Eager v. Price*, id. 338. The action as against the new parties, brought in by amendment, stands upon the case as it stood at the time of the commencement of the action and service of the injunction upon *Fancher*, and nothing which occurred between *Fancher* and *Miller* after that time can affect plaintiff's equities. *N. A. Coal Co. v. Dyett*, 2 Edw. Ch. 119; *Bloomfield v. Snowden*, 2 Paige, 355.

*O. S. & F. H. Head*, for respondents, to the point that the acceptance by the *Millers* of the notes in question in payment of *Fancher's* indebtedness to them was a valuable consideration, and entitled them to protection, cited *Bank of St. Albans v. Gilliland*, 23 Wend. 311; *Bank of Salina v. Babcock*, 21 id. 499; *Bank of Sandusky v. Scoville*, 24 id. 115; *Farrington v. Frankfort Bank*, 24 Barb. 554; *N. Y. Marbled Iron Works v. Smith*, 4 Duer, 362; *Gould v. Segee*, 5 id. 260; *Purchase v. Matteson*, 3 Bosw. 310; 1 Parsons on Bills & Notes, 221 and cases there cited, and 257; *Stevens v. Campbell*, 13 Wis. 378. The fact that *Fancher* indorsed the notes sold by him does not affect the question. They were payable to his order, and his indorsement was necessary to their transfer. As to two of them, which were past

due, his indorsement created no liability. And even if he had been held as indorser, it would still have been a payment of his former indebtedness, within the decisions. Before such payment he was the principal debtor; afterward his liability was merely contingent. It was as if one should convey land by warranty deed in payment of a debt, and should afterward be held liable on his covenants. 24 Wend. 114.

The following opinion was filed at the June term, 1865 :

DOWNER, J. This action was commenced on the 6th day of November, 1861, in the Racine circuit court, by the service of the summons, injunction order and complaint on the defendant *Fancher.* Some two or three days after, *Fancher*, at Elkhorn, in Walworth county, sold and transferred to *Miller and wife*, three notes, two for $400 each, then past due, against one *West*, and one for $500, not due, made by *Farr & Moore;* all the notes being partnership property. The partnership between *Fancher* and the *Kelloggs* was carried on in the name of *Fancher. Miller and his wife* gave for the notes transferred to them by *Fancher*, notes held by them, or one of them, against him, amounting to about the same sum. *Miller and his wife* testify, in substance, that the consideration of the notes they held against *Fancher*, was money loaned to *Fancher* by his sister, Mrs. Miller, before her marriage, and interest thereon. They testify that they had no knowledge, at the time they purchased the notes of *Fancher*, of the pendency of this action, or that *Fancher* had any partners ; and they claim the protection which innocent purchasers for a valuable consideration are entitled to. They took the notes transferred to them in payment of an antecedent indebtedness. There is some conflict of authorities as to whether such purchasers can be *bona fide* purchasers. We think, however, that the weight of authority is, that the extinguishment or payment of an antecedent

indebtedness is as good and valuable a consideration as the payment of money. We see nothing to impeach the testimony of *Miller and wife*, and must take their testimony as true. We hold, therefore, that they are entitled to protection against the claim or lien of the partners of *Fancher*, and against the creditors of the firm, unless the pendency of the action was a constructive notice to them, or the policy of the law is such that they must, by reason of the *lis pendens*, hold their title to the notes subject to the claims of the plaintiff and the judgment in the action.

Are *Miller and wife* affected with notice of this action, or can its pendency in any way affect their title to the notes in question? The doctrine of *lis pendens*, in its application to real estate, was described by Chancellor KENT, in *Murray et al. v. Ballou et al.*, 1 Johns. Ch. 566. He says: "The established rule is, that a *lis pendens*, duly prosecuted and not collusive, is notice to a purchaser so as to affect and bind his interest by the decree; and that the *lis pendens* begins from the service of the subpoenas after the bill is filed." He adds, "that it is no more than the adoption of the rule in a real action at common law, where, if the defendant aliens after the pendency of the writ, the judgment in such real action will overreach such alienation."

In *Murray v. Lylburn*, 2 Johns. Ch. 441, the principles asserted in *Murray v. Ballou*, were held to apply to choses in action. In *Diamond v. Lawrence County*, 37 Pa. St. 353 (where nearly all the authorities on this point are cited), the court held that the pendency of a suit between a county and a railroad company, in regard to bonds issued by the county in payment of its subscription to the stock of the company, is notice to all the world of the facts alleged in the pleadings therein; and that the purchasers of such bonds from the company, and all subsequent purchasers, were affected by the decree of the court in the suit pending at the time of the pur-

chase.    The court held, however, that the bonds were not com-
mercial paper; and it is very evident, from the opinion, that
they would not apply the doctrine of *lis pendens* to bills of
exchange or promissory notes negotiable according to the law
merchant and *not due* at the time of transfer.    Chancellor
KENT also, in *Murray v. Lylburn*, expressed a doubt whether
the rule of *lis pendens* was to be carried so far as to affect
negotiable paper not due.

In actions respecting real estate, our statute provides that
the pendency of the action shall be constructive notice only
from the time of filing notice of *lis pendens* in the office of the
register of deeds; but the rule in respect to personal property
remains as at common law, in full force; and we see no reason
why the *lis pendens* does not affect promissory notes transfer-
red by a party to the suit during its pendency, and which were
past due at the time of the transfer.    They appear to be within
the rule as expounded by the cases cited.    We hold, therefore,
that the pendency of the action was constructive notice to
*Miller and wife*, so far as to affect their title to the two notes
against West of $400 each, past due when they received them.

The foregoing was written under the supposition that what
was assumed by the counsel for the appellants in his argument,
and not denied by the counsel for the respondents, to wit, that,
at the time of the transfer of the notes to *Miller and wife*,
there was a *lis pendens*, was true.    But on looking into the
record we find that the complaint and summons were not filed
in the circuit court till the 18th of November, 1861; so that
after the service of the summons and complaint, and before
they were filed, the notes were transferred to *Miller and wife*.
This presents a new question.

Was the filing of the complaint at or before the time of the
transfer absolutely necessary to affect *Miller and wife* with the
constructive notice of *lis pendens?*    If the doctrine applies
only where a purchaser, upon searching the records of a court,

could have actual notice, then the purchasers before the complaint was filed cannot be affected by the suit. In two of the cases above cited, the court say the *lis pendens* begins from the service of the subpœna after the bill is filed; and to the same effect are several other American decisions. But in all these cases the law in force at the time the bill was filed, and the practice of the court, required the bill to be filed before the subpœna was issued; so that there could be no service of the subpœna till after the bill was filed. They cannot, therefore, be regarded as decisions to the effect that the *lis pendens*, in a case where the law authorized the subpœna to issue and be served before the bill was filed, would not begin until the filing of the bill. Formerly the practice was in England for the subpœna to issue before the bill was filed, and the English courts held that there was no *lis pendens* until the service of the subpœna and bill filed, but when the bill was filed, the *lis pendens* existed from the service of the subpœna, although the bill was not filed until long after; so that a purchaser after service of the subpœna, and before the bill was filed, would, after the filing of the bill, be deemed to be a *lite pendente* purchaser. *Pigott v. Nower*, 3 Swanst. 536; 1 Vernon, 318. See also *Newman v. Chapman*, 2 Randolph, 102. The rule of *lis pendens*, as adopted by the common law courts, was not based so much on the idea of notice to the purchaser, actual or constructive, as upon the necessity of such a rule to give effect to their judgments. For at common law the writ was pending from the first moment of the day on which it bore *teste* and was issued. The Code, as to the forms of pleading, has abolished the distinction between law and equity, and permitted, in what before the Code were equity cases, the summons to be issued and served before the complaint is filed.

Shall we now adopt the rule, as to *lis pendens*, as held in suits at law, or as relaxed by the chancery courts in England on its first adoption in those courts; or shall it be further

relaxed, and declared not to exist until the complaint is filed after service of the summons?

This point has not been argued by counsel, and the arguments of learned counsel are of great assistance to the court.

A rehearing is therefore ordered in this case, the argument to be confined to this point.

The cause was further argued at the February term, 1868, and finally disposed of at the June term of that year.

PAINE, J. The single question reserved for re-argument was, whether the purchasers of the notes, who purchased in good faith and without any actual notice, were to be charged with constructive notice by reason of the service of the summons and injunction on the original defendants, no papers having at the time of the purchase been filed in the office of the clerk. In principle it would seem clear that they ought not to be so charged. The doctrine of constructive notice cannot justly be applied to the business transactions of men, unless there is a record somewhere, accessible to the party to be affected, and by examining which he may have actual notice. Where this is the case, there is no injustice in applying the rule of *lis pendens*; for the purchaser, by due diligence, might inform himself that the property was in litigation. But where this is not the case, the application of that rule would expose him to damage which no diligence could guard against.

Under the old system of practice the question could not arise, as the bill was required to be filed before an injunction was issued. But this has been changed by the Code, so that injunctions may be granted and served, and the papers all remain in the possession of the parties to the suit or their attorneys. No case has been cited under the Code, where the rule of *lis pendens* has been applied before the papers were filed. And justice and sound policy require that it ought not

to be so applied.    This conclusion is supported by the statutory rule concerning the *lis pendens* as affecting real estate.

We are not inclined to adopt the doctrine of relation that has sometimes been applied, so as to hold that when the papers are filed the *lis pendens* relates back to the service.    This is only an indirect method of charging a party with notice of that which he had no means of obtaining knowledge of.

The true and just rule is to require the papers to be filed, so as to show upon the records that a suit has been commenced, in which the property is drawn into litigation, before any purchaser is chargeable with notice of it.    And this is no hardship upon the plaintiffs.

*By the Court.* — The judgment is affirmed, with costs.