## Myers *v.* Hazzard *et al.*

### (*Circuit Court, D. Nebraska.* September, 1881.)

1. Chattel Mortgages—Negotiable Instruments—Bona Fide Purchase. -

   A *bona fide* purchaser before maturity of negotiable notes secured by a chattel mortgage given by one having the legal title to the chattels takes both notes and mortgage freed from the claims of the assignee in bankruptcy of a third person, who has an undisclosed interest in the chattels and notes.

2. Same—Bankruptcy.

   The chattels being still in the hands of the mortgagor at the time the notes were purchased, the fact that the assignment was made prior thereto does not affect the purchaser's rights under the mortgage, as the property was not *in custodia legis*, so as to affect him with constructive notice.

3. Negotiable Instruments—Lis Pendens.

   The doctrine of *lis pendens* does not apply to negotiable paper, and a *bona fide* purchaser thereof before maturity takes a perfect title, although a suit to enjoin negotiating the same is pending at the time.

Bill in equity, brought by complainant, as assignee in bankruptcy of George Hazzard, to set aside as fraudulent certain promissory notes, and a mortgage given to secure them, upon a herd of cattle, and to subject the interest of the bankrupt in said cattle to the payment of the debts of the bankrupt estate. The bankrupt was at the time of his bankruptcy undoubtedly the owner of a large interest in the herd of cattle, and complainant was clearly entitled to recover that interest as against all the parties concerned except respondent Coates, who claimed to be an innocent purchaser without notice of the negotiable promissory notes above mentioned, secured by mortgage upon the cattle, under which mortgage he had taken possession. The cattle being held in the name of the firm of Foster & Struthers, but being in fact in part owned by George Hazzard, were mortgaged to John W. Hazzard to secure a number of negotiable promissory notes, with the understanding that said John W. Haz-

zard should negotiate the notes, and out of their proceeds pay a certain prior incumbrance. These notes and the mortgage securing them were executed January 31, 1879, all the parties to the transaction being at that time aware of the interest of George Hazzard. Notice of application for order of injunction against disposing of the notes and mortgage in this suit then pending was served upon John W. Hazzard at North Platte, in Lincoln county, Neb., on the ———— day of March, A. D. 1879, and was served on George Hazzard at Indianapolis, in the state of Indiana, the ———— day of ————, 1879. Thereupon George Hazzard returned to the state of Nebraska, and procured John W. Hazzard to go to the city of Chicago, in the state of Illinois, and employed one H. W. Babb, of North Platte, Neb., to go with him, and answer such questions as should be put to him in regard to the laws of Nebraska. The purpose of such journey was to make a disposal of said securities, and John W. Hazzard and H. W. Babb left North Platte about the 30th of March, 1879, and arrived at Chicago on the evening of April 1, 1879. Injunction was allowed in this cause, restraining, etc., on the 31st day of March, 1879, but not served on John W. Hazzard. John W. Hazzard sold said notes and mortgage at Chicago on the 3d day of April, 1879, for $22,000, to Isaac P. Coates, the defendant.

A large volume of proof was taken upon the question whether Coates was a *bona fide* purchaser of the notes before maturity and without notice, and the question was elaborately discussed by counsel. A further question was also presented, to wit, whether, if Coates be a *bona fide* purchaser of the notes before maturity and without notice, he is to be protected in his right to the mortgaged property as against the claim of the assignee in bankruptcy of George Hazzard. The master found that Coates was an innocent purchaser, and that he was entitled to the benefits of the mortgage security. The case was heard on exceptions to the master's report.

*Chapman & Hammond* and *Lamb, Billingsley & Lambertson,* for complainant.

*E. Wakeley,* for respondent Coates.

McCRARY, Circuit Judge. It will be observed that this case presents an important question of law respecting the rights of the *bona fide* purchaser of commercial paper secured by mortgage. Assuming that Coates was such a purchaser, and that he had no notice of the fraud, (and such the court finds to be the fact,) the case turns mainly upon the question, which has been elaborately argued by counsel, whether he is to be regarded in the light also of an innocent *bona fide* purchaser of the mortgage, so as to have the right to enforce it as against the assignee in bankruptcy of George Hazzard.

The question to what extent, and under what circumstances, the *bona fide* purchaser of negotiable commercial paper secured by mortgage is entitled to the benefits of the mortgage security, unaffected by equities existing as between the original parties, is one of great and growing importance. It is now well settled that the mortgage is only an incident

to the debt, and passes with it to the assignee. No formal assignment of the mortgage is necessary. The debt is the principal thing, and the mortgage an accessory, so that the assignment of the debt passes all the mortgagee's interest in the mortgaged property, whether the assignment be before or after the forfeiture. *Langdon* v. *Buel*, 9 Wend. 80; *Gould* v. *Marsh*, 1 Hun, 566; *Johnson* v. *Hart*, 3 Johns. Cas. 322; *Ellett* v. *Butt*, 1 Woods, 214; *Guff* v. *Harding*, 48 Ill. 148; 1 Jones, Mortg. §§ 813–822, and cases cited. Where there is no question as to the validity or construction of the mortgage, or as to the title of the mortgagor as between the original parties to the instrument, there can be none, of course, as between the mortgagor and the assignee of the secured debt. The cases of doubt and difficulty arise where, as between the original parties to the mortgage, there is a question as to its validity, or as to its force and effect, independent of any question affecting the note, or where a third party claims the mortgaged property and denies the authority of the mortgagor to fasten a lien upon it. In such cases, to what extent can the innocent, *bona fide* purchaser of the note before due be regarded as an innocent purchaser of the mortgage also, and entitled to protection accordingly against equities existing as between the original parties?

We are confronted in the outset by a conflict of authority upon the principal question. In several of the states it is held that the assignee of a negotiable note, secured by mortgage, takes the latter, as he would any other chose in action, subject to all the equities which subsisted against it while in the hands of the original holder. The argument in support of this doctrine is that a mortgage is in its nature a nonnegotiable instrument, and that the rights of the parties to it cannot be fixed and determined by the law merchant. Mortgages, it is insisted, are not commercial paper, and it is not convenient to pass them from hand to hand, so that they may perform the office of money in commercial transactions, as may be done with notes, bills, and the like. It is accordingly held, in the cases now under consideration, that while the purchaser of a note secured by mortgage may be entitled to all the rights of an innocent purchaser of commercial paper, so far as the note is concerned, yet, if he seeks to foreclose the mortgage, he may be met by any defense which would have been good as against the original mortgagee. *Johnson* v. *Carpenter*, 7 Minn. 176, (Gil. 120;) *Hostetter* v. *Alexander*, 22 Minn. 559; *Olds* v. *Cummings*, 31 Ill. 188; *White* v. *Sutherland*, 64 Ill. 181; *Fortier* v. *Darst*, 31 Ill. 212; *Sumner* v. *Waugh*, 56 Ill. 531; *Baily* v. *Smith*, 14 Ohio St. 396. On the other hand, it is held by the supreme court of the United States, and by the courts of last resort in a large majority of the states, that an assignee for value of a negotiable note secured by a mortgage, before due and without notice, takes the mortgage, as he does the note, free from equities existing between the original parties. It is said, in support of this doctrine, that the note, being the principal thing, imparts its character to the mortgage. The mortgage is regarded as following the note, and as taking to itself the same qualities, so that the assignee takes the former, as he takes the latter, free from any existing equities between the original parties. A leading case upon this subject,

and a controlling one, so far as the federal courts are concerned, is that of *Carpenter* v. *Longan*, 16 Wall. 271. In that case the rule just stated was laid down by Mr. Justice SWAYNE as follows:

"The assignment of a note underdue raises the presumption of the want of notice, and this presumption stands until it is overcome by sufficient proof. The case is a different one from what it would be if the mortgage stood alone, or the note was nonnegotiable, or had been assigned after maturity. The question presented for our determination is whether an assignee, under the circumstances of this case, takes the mortgage, as he takes the note, free from the objections to which it was liable in the hands of the mortgagee. We hold the affirmative. The contract as regards the note was that the maker should pay it at maturity to any *bona fide* indorsee, without reference to any defenses to which it might have been liable in the hands of the payee. The mortgage was conditioned to secure the fulfillment of that contract. To let in such a defense against such a holder would be a clear departure from the agreement of the mortgagor and mortgagee, to which the assignee subsequently in good faith became a party. If the mortgagor desired to reserve such an an advantage, he should have given a nonnegotiable instrument. If one of two innocent persons must suffer by a deceit, it is more consonant to reason that he who 'puts trust and confidence in the deceiver should be a loser, rather than a stranger.' "

In order to understand the scope of this opinion, it is necessary to note that the defense in the case as against the mortgage was, in substance, that, as between the original parties, it had been satisfied. The mortgagor alleged that at the time of the execution of the mortgage she delivered to the mortgagee certain property, which he agreed to sell, and apply the proceeds to the satisfaction of the note, and that, instead of so doing, he converted the property so delivered to his own use. The sole question was whether the equitable satisfaction of the mortgage in this way could be set up as against the assignee. This case is not, therefore, as some lawyers have assumed, authority for the doctrine that the *bona fide* purchaser, without notice, of a negotiable underdue note, secured by mortgage, holds the mortgage precisely as he holds the note, subject to no defenses whatever that would not be good against the latter. In that case there was no question as to the title of the mortgagor at the time that the mortgage was given, nor as to the rights of any third party with respect to the mortgaged property, nor as to the validity or construction of the mortgage itself. It seems manifest that it was not the intention of the court to assert broadly the rule that, because a mortgage is given to secure a negotiable note, which, before maturity, is assigned to a *bona fide* purchaser, therefore no objection can be raised to the mortgage, unless it would be an objection constituting a defense to the note in the hands of such a purchaser. The court decided the case before it, and was careful to qualify its opinion by the words, "under the circumstances of this case." The general rule announced in *Carpenter* v. *Longan* has been adopted in Massachusetts, Maine, Michigan, Wisconsin, Nebraska, Iowa, Missouri, and other states. See Jones, Mortg. § 834, and numerous cases cited. But the doctrine has not yet been established as the law of New York or Pennsylvania. *Union College* v. *Wheeler*, 61 N. Y. 88; *Horsman* v. *Gerker*, 49 Pa. St. 282.

For our present purpose we will assume, as we are bound to do, the soundness of the general rule announced in *Carpenter* v. *Longan*, and similar cases, and address ourselves to the task of determining, if we can, its true meaning and its proper limitations. Although the general language employed in some of the cases might seem to justify the inference that a mortgage transferred with a negotiable note before due is to be treated for all purposes as commercial paper, it is manifest that the rule thus broadly stated cannot be maintained upon principle. In many of the cases the rule is stated to be that the mortgage is regarded as following the note, and as taking the same character; but it must, of course, be understood that the mortgage takes the character of a negotiable note only in so far as in its nature it is capable of having that character imputed to it, and therefore the rule must be subject to certain modifications or exceptions. In any suit brought by the assignee of the note to foreclose the mortgage, the mortgagor may be heard to assert that the mortgage is invalid as to all or part of the property, by reason of anything that appears upon the face of the mortgage, or by reason of anything that the assignee is bound by law to know, whether the same constitutes a defense to the note or not. A third party may be heard to assert, as against the validity of such a mortgage in the hands of the assignee, that the mortgagor, at the time of the execution of the mortgage, had no power to execute it. The mortgage in the hands of the assignee, like the note, is freed from equities existing as between the original parties. This being so, no defense to the mortgage, on the ground of fraud, duress, or want of consideration, could be admitted as against the assignee; nor could the defense of payment or satisfaction, nor of a release of the mortgage, as between the original parties, nor of any other similar matter, be set up. But there may, beyond question, be defenses to a mortgage in such a case that cannot be defenses to the note,—defenses the force and effect of which cannot be determined by an appeal to the principles of the law merchant. Of this character are objections which relate to, and in the nature of the case can only relate to, the mortgage, its construction, validity, or force and effect. They may be objections which third parties only are interested in raising. We cannot give to the mortgage all the properties of negotiable paper, nor apply to it all the principles of the law merchant, without a disregard of elementary principles. A few examples may serve to illustrate this proposition. There are in most, if not in all, of the states statutes designed for the protection of the homestead rights of the family of the owner. These statutes generally provide that a mortgage executed by the husband alone, without the concurrence of the wife, shall be void. If, in a state where such a statute prevails, the husband executes his negotiable note, and a mortgage to secure the same, without the wife's concurrence, upon the homestead occupied by himself and family, there can be no reasonable doubt that the mortgage would be void, even in the hands of a *bona fide* purchaser of the note before due. The assignee of the mortgage would be bound to inquire whether the property mortgaged was a homestead, and would have con-

structive notice that it was occupied as such; while the purchaser of a
negotiable note is not bound to make any inquiries, but, on the contrary,
as we shall presently see, is protected unless he acts in bad faith.    A
similar question may arise where the mortgagor has the legal title, but
where a third party is in possession, claiming an interest.    In such a
case the possession of the third party would be notice of his claims, and
a purchaser or mortgagee would take subject to them.    Doubtless the
assignee of the mortgage debt would take the mortgage with like notice;
but, if so, he would not be protected to the same extent and in the same
way as a *bona fide* purchaser of negotiable paper before due.

It is probable that another modification of the general rule we are
considering must be admitted in cases arising out of the entry of satis-
faction by a mortgagee after he has assigned the debt secured by the
mortgage.    If we are to apply the rule strictly, it will follow that, in
the absence of a statute requiring assignments of mortgages to be re-
corded, the purchaser of the mortgaged property is bound to inquire
whether the mortgagee is still the holder of the notes before relying upon
a release of the mortgage by him.    This upon the ground that in such
a case the notes are the evidence of the authority of the mortgagee to
enter satisfaction of the lien, and so it has been held.    *Catherwood* v.
*Burrows,* 7 Reporter, 492; *Crosby* v. *Roub,* 16 Wis. 616; *Martineau* v.
*McCollum,* 4 Chand. 152; *Cornell* v. *Hichens,* 11 Wis. 353; 1 Jones, Mortg.
§ 314.

It would seem that the rule laid down in these cases results very nat-
urally from the doctrine that an innocent purchaser of a negotiable note,
secured by mortgage, is an innocent purchaser of the mortgage also,
and takes it unaffected by any equities between the mortgagor and mort-
gagee.    And yet it has not been adopted with unanimity.    On the
contrary, it has been held frequently that an assignment of the mort-
gage by transfer of the debt is effective only as between the parties and
those having notice of the transfer of the notes.    It is said with much
force that a subsequent purchaser of the mortgaged property is not bound
to take notice of the assignment by transfer of the notes alone.    "The
assignee of the notes can easily protect himself by requiring an assign-
ment of the mortgage, and recording it, and thus give notice of his
right; and, if he omit to do this, he should be the party to suffer for
the negligence." 1 Jones, Mortg. § 820; *Bank* v. *Anderson,* 14 Iowa,
559; *Ayers* v. *Hays,* 60 Ind. 452.    The doctrine of these cases may
well be maintained upon the principles of equity that, where one of two
innocent persons must suffer loss, and one of them has been negligent
and the other diligent, the former shall suffer.    But the application of
this rule presupposes that the purchaser of the notes is chargeable with
negligence in not obtaining an assignment of the mortgage, and placing
the same upon the record, which can scarcely be true if, by the purchase
of the notes, he becomes entitled to the mortgage without an assignment,
and is to be protected in his rights under it against every defense that
would not be good against the notes.    The difficulty lies in the attempt
to treat a mortgage for all purposes as commercial paper.    Perhaps the

question most frequently arises in cases involving the rights of third parties in and to the mortgaged property. These cases generally present, in some form, the question of the title of the mortgagor, or of his right to bind the property by the mortgage, or a question of priority as between the different lienholders. The general rule is that the mortgage binds only the interest of the mortgagor at the time of its execution; but an important exception arises in those cases where the mortgagor, though not the owner in fact, is vested with the legal title and the ostensible ownership of the property mortgaged, so that the real owner is estopped to assert his right to it as against a mortgagee in good faith, for a valuable consideration, and without notice. For the purposes of this doctrine, a mortgagee is a purchaser, and the question whether he is an innocent purchaser, without notice, will be determined by the familiar principles applicable to all other purchasers. It would seem, also, to follow, as a necessary consequence of the prevailing doctrine, that the assignee of the mortgage, whether by a formal assignment or by purchase for value before maturity and without notice, of the note which it secures, is to be regarded also as a purchaser of the mortgaged property within the rule. Keeping these rules in view, we shall have constantly in mind the principles upon which to determine every case in which the title of the mortgagor is sought to be attacked by a third party. The application of this doctrine may be illustrated by the case of a trustee in possession, and having all the insignia of title, but who, in fact, holds in secret trust for a third party. If such a trustee executes a mortgage for a valuable consideration to an innocent mortgagee, who takes it, and advances money or gives credit upon the faith of it, the real owner will be estopped to question the validity of the mortgage in the hands of the mortgagee or his assignee, on the ground that the mortgagor was not the owner. Such mortgagee, as we have already seen, is a purchaser; and it is well settled that where a trustee in possession of the trust estate makes a *bona fide* conveyance of it, for a valuable consideration, to a purchaser who has no notice of the trust, the title of the purchaser will be good both at law and in equity, for he has equal equity with the *cestui que trust*, and the legal conveyance gives him priority at law. Hill, Trustees, 282, 509, *et seq.*

Another numerous and important class of cases arises out of conveyances made without consideration, and with intent to defraud creditors. The grantee in all such conveyances takes the property in trust for the grantor or his creditors; but, inasmuch as he is clothed with the legal title, he may make a valid mortgage, for a valuable consideration, to a third party, who has no notice of the fraud or the trust; and in such a case neither the original owner nor his creditors, though the latter be entirely innocent, can set aside the mortgage on the ground that the mortgagor had no title to mortgage. The original owner is estopped because of his fraudulent act in vesting the title in the mortgagor; the creditors are estopped because their equity is not superior to that of the mortgagee, and for the additional reason that the latter holds under one who had the legal title. If, however, a creditor has, before

the mortgage is executed, taken steps to set aside the fraudulent conveyance and to subject the property to the payment of the debts of the fraudulent grantor, then a question of more difficulty may arise. It is generally, however, one which resolves itself simply into a question of notice, and it will in general be determined by settling the question whether the mortgagee is a purchaser for value and without notice. If the creditor has instituted legal proceedings to set aside the sale before the execution of the mortgage, the question will be whether the mortgagee had either actual or constructive notice of such proceedings. It is held that, where a fraudulent mortgage is given to secure a negotiable promissory note, void as between the parties, if a creditor or assignee in insolvency seizes the property and files a bill to set aside the mortgage before the assignment of the note and mortgage, the assignee, though he takes for a good consideration and without actual notice, cannot hold the property. If, however, the purchaser of the note and the mortgage had acquired title in good faith and for a valuable consideration before any steps had been taken to avoid the mortgage, he would have stood on a different ground. Jones; Chat. Mortg. § 508; *Bigelow* v. *Smith*, 2 Allen, 264.

In making the application of these rules, it will be found necessary to observe the distinction between mortgages of real estate and mortgages of personal property. The general principles above indicated apply alike to all mortgages, but the particular rules by which the questions as to notice and as to what constitutes, as to purchasers or mortgagees, sufficient evidence of title in the mortgagor, may not be the same. Purchasers or mortgagees of real estate may, ordinarily, rely on the record title, while purchasers or mortgagees of personal property must, as a rule, take the chances as to the vendor's title. If a negotiable promissory note, secured by mortgage upon personal property, be assigned for value, before maturity, to a purchaser without notice, to what extent is such purchaser bound to inquire as to the title of the mortgagor to the mortgaged property? As, for example, suppose the case of an insolvent, who, in contemplation of bankruptcy, fraudulently transfers his personal property to another to keep it from coming into the hands of his assignee in bankruptcy, and thereafter goes into bankruptcy; in such a case it is, of course, clear that the assignee could recover the property from the fraudulent vendee; but if he has mortgaged it to secure a negotiable note, which is transferred before due to an innocent purchaser for value, will the latter be protected as against the claims of the assignee? Each case involving questions of this character must be determined upon the rule above stated, viz., that the assignee of the note is to be regarded as a purchaser of the mortgaged property from the mortgagor, and to be protected to the extent that any other purchaser would be protected, and to that extent only. The purchaser of personal property from a fraudulent vendee, in good faith and without notice of the fraud, is unaffected by the equities of third parties of which he has no notice. *Jarrell's Assignee* v. *Harrell*, 1 Woods, 476; *Pratt* v. *Curtis*, 6 N. B. R. 139. Applying this rule to the case of the

assignee of a negotiable note, secured by mortgage upon personal property, under such circumstances as to make him the purchaser of the property, we reach the conclusion that in such a case as that last stated he is entitled to protection.

Our conclusions in this case are as follows:

1. The respondent Isaac P. Coates is a *bona fide* purchaser of the notes described in the pleadings, before maturity and without notice, within the rule established by the decision of the supreme court of the United States in *Murray* v. *Lardner*, 2 Wall. 110, and he is entitled to protection accordingly.

2. The said respondent Coates, as the *bona fide* purchaser of said notes before maturity and without notice, took the mortgage, as he did the notes, freed from equities arising between the previous parties thereto, and also freed from any latent equity existing in complainant at the time of the assignment of the notes of which he, said Coates, had no notice. *Carpenter* v. *Longan*, 16 Wall. 271; *Murray* v. *Lylburn*, 2 Johns. Ch. 441.

3. The said Coates, as the assignee of said notes and mortgage, under the circumstances developed in proof, is entitled to the same protection that would be accorded to the purchaser of property from a fraudulent vendee, in good faith and without notice of the fraud. Such a purchaser would be unaffected by latent equities of third parties of which he had no notice. *Jarrell's Assignee* v. *Harrell*, 1 Woods, 476; *Pratt* v. *Curtis*, 6 N. B. R. 139.

4. The title of Coates to the notes, and his protection as a *bona fide* purchaser, was not affected by the pendency of this suit. Negotiable instruments are not subject to the rule of *lis pendens*. Wade, Notice, § 372; *Day* v. *Zimmerman*, 68 Pa. St. 72; *Kellogg* v. *Fancher*, 23 Wis. 21.

5. Since at the time of the assignment of the notes and mortgage to Coates the mortgaged property was not *in custodia legis*, but was in the possession of the mortgagors, the same was not, in the hands of Coates, subject to the result of this suit, nor was he charged with notice of this suit.

6. Property held in the name of John W. Hazzard at the time George Hazzard was adjudicated bankrupt did not *ipso facto* vest in the assignee in bankruptcy. There existed in the latter only the right to recover it upon making proof that it was in equity the property of the bankrupt. This right the assignee was bound to exercise before the transfer of the property to a *bona fide* purchaser without notice of his claim. After such transfer he cannot recover it from such purchaser. The assignee of the notes and mortgage (Coates) was such a purchaser, or, if not technically such, he is entitled to the same protection.

7. The rights of Coates, as purchaser of the notes in question, are not affected by the fact that said notes were in equity the property of George Hazzard, or of his assignee in bankruptcy, nor by the fact that the notes in lieu of which they were executed may have been indorsed in blank and delivered to said George Hazzard. The purchaser, in good faith and without notice, of negotiable notes before maturity from the payee, is entitled to protection.

8. The failure of Coates to answer, as a witness, certain questions put to him upon cross examination does not justify the court in rejecting his entire testimony on the trial. It was the duty of complainant's counsel to move the court for an order requiring him to answer, or, in case of his refusal to do so, to strike out his entire deposition.

It follows from these conclusions that the exceptions to the master's report must be overruled, and that there must be decree as recommended by him.