### Case No. 4,384.
ELLETT v. BUTT et al.
[1 Woods, 214.] [1]
Circuit Court, D. Louisiana. Nov. Term, 1871. [2]

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]
[2] [Affirmed in 19 Wall. (86 U. S.) 544.]

J. N. Lea, John Finney, and H. C. Miller, for complainant.

Thomas Allen Clarke, Henry L. Bayne, and Henry Renshaw, Jr., for defendants.

WOODS, Circuit Judge. The bill alleges in substance, that on September 4, 1866, William Sillers, of the state of Mississippi, was seized in fee of the "Asia" plantation, situated in Bolivar county in that state, and that on the 1st day of January, 1867, by a writing of that date he leased said plantation to one John H. Graham for one year for a rent reserved of $7,000, one-half to be paid on the first of October by a draft drawn by Graham in favor of Sillers on the defendants, who were commission merchants and factors in the city of New Orleans, and the other half on November 1st, to be evidenced by the note of Graham payable to Sillers and falling due on that day. Graham by the stipulations of the lease pledged and mortgaged the crops grown on the plantation during the year 1867, to the faithful performance of his covenants therein written, and authorized Sillers and his assigns on thirty days' notice to seize and sell the same for cash, the said sale to raise money sufficient to pay all arrearages of rent. That the lease was duly executed and recorded. That Sillers and Graham met in the city of New Orleans on the 8th of February, 1867, for the purpose of procuring the acceptance of defendants of the draft to be given by Graham on them by the terms of said lease, and the said lease and mortgage was then and there exhibited to the defendants, and was read and considered by them and the terms thereof fully understood and a counterpart thereof left with them. That with full notice that Sillers had the first lien on the crop of Graham, they accepted said draft, and the same has been paid and satisfied. That Graham also delivered to Sillers the note for $3.500 provided for by said lease, due Nov. 1, 1867. That said mortgage contained in said lease became by the laws of Mississippi, a lien upon Graham's crop supe-

rior to all claims of other creditors of Graham, and of any claim of defendants against him. That Graham cultivated the plantation under said lease during the year 1867, and planted, matured and gathered a crop of cotton amounting to 49 bales of 450 pounds each. That on the 4th day of September, 1866, the circuit court of Claiborne county, Mississippi, rendered a judgment against Sillers, in favor of the present complainant, for $10,103.89, which, being duly recorded on September 14, 1866, became a lien upon the "Asia" plantation. That on the 28th of April, 1867, an execution issued on said judgment was levied on said plantation, and the same was sold by the sheriff at public auction, to complainant, on the 3d day of June, 1867, by virtue of said execution, and the plantation was conveyed to him by the sheriff by deed of that date. That at the time of said sale, Graham was in possession of said plantation under said lease, and the effect of the sale was to substitute complainant in the place of Sillers as landlord of Graham, and to entitle complainant to the rent of the plantation which had not yet fallen due. That Sillers, knowing the legal effect of said sale and conveyance, indorsed and delivered the said note of Graham to complainant, who is now the holder and owner thereof, and entitled to pursue all remedies for its collection that Sillers might. That, in the fall of 1867, the defendants, through an agent sent for that purpose to the plantation, received from Graham 49 bales, the crop of cotton produced by him on said plantation during that year and shipped the same to New Orleans, and sold and disposed of the same to their own use, well knowing that the same was subject to the lien of complainant. The cotton was middling cotton, and worth at the time it was taken by defendants 25 cents per pound. That on the shipment of the first 27 bales complainant notified defendants by letter that he claimed the cotton, and should hold them responsible for its proceeds. The bill prays for an account of the amount for which said cotton sold, to be estimated at the highest price reached by cotton since the asportation thereof by defendants, and before final decree, and that defendants may be required to pay the value thereof so estimated to be applied on the amount due complainant on the note of Graham.

The answer of defendants admits that they saw and read, in February, 1867, the lease made by Sillers to Graham, but avers that Sillers stated that the part thereof by which he secured a lien on Graham's crop for the payment of rent was not valid and binding by the laws of Mississippi, and that he released the same so far as it affected them. They deny that the lease to Graham operated as a lien upon the crop. They deny that the cotton shipped by Graham was shipped through the intervention of their agent. They deny that they had any notice of complainant's claim on the cotton until the receipt of his letter dated November 25, 1867. They further say that, in February, 1867, they entered into a contract in writing with Graham, by which they agreed to advance to him $5,500 in supplies for his plantation, besides accepting the said draft for $3,500, and Graham agreed to ship to them the cotton grown on the Asia plantation to be sold, and that they should have a lien upon the same to repay the said advances. And that this agreement was recorded in Bolivar county, Mississippi, on February 20, 1867. Complainant files the general replication.

The first question presented by these pleadings is, did Sillers, by the document called a lease and mortgage, secure a lien upon the crop of Graham for the payment of the rent? The legislature of Mississippi by an act approved February 18, 1867, subsequent to the date of Sillers' lease, provided that it should. be lawful to convey by way of mortgage or deed of trust, any crop of cotton, etc., being produced or to be produced within fifteen months from the date of such mortgage. The defendant draws the inference from this act that such a mortgage was not valid before the date of the act. We think the act to be merely declaratory of what the law was before its passage, adding a limitation that the crop mortgaged must be produced within fifteen months. If property not in esse or in the ownership of the mortgagor can be mortgaged, and that question we will consider presently, there surely can be no reason why a crop to be produced during the current year might not be mortgaged. Such a contract is not immoral, against public policy, or fraudulent. If the parties are capable of contracting, such a contract, if made on valuable consideration, has all the elements of a binding contract.

Can property to be acquired in futuro be incumbered by mortgage? The authorities answer this question in the affirmative. In Pennock v. Coe, 23 How. [64 U. S.] 117, the point was made that a person cannot grant what he has not got. But the court said "that the principle has no application to the case before us. The mortgage here does not undertake to grant in presenti property of the company not belonging to them or not in existence at the date of it, but carefully distinguishes between present property and that to be afterwards acquired," and the court held that a grant can take effect upon the property when it is brought into existence and belongs to the grantor in fulfillment of an express agreement founded on a good and valid consideration, where no rule of law is infringed or the rights of a third party prejudiced. So in Mitchell v. Winslow [Case No. 9,673] Mr. Justice Story says: It seems to me a clear result of all the authorities, that whenever the parties by their contract intended to create a positive lien or charge ei-

ther upon real or personal property, whether then owned by the assignor or contractor or not, or if personal property, whether it is then in esse or not, it attaches as a lien in equity or charge upon the particular property, as soon as the assignor or contractor acquires a title thereto against the latter, and all persons asserting a claim thereto, under him, either voluntarily or with notice. See, also, 2 Story, Eq. Jur. § 1021; Cross, Liens, 187, 188, et seq.; Prebble v. Boghurst, 1 Swanst. 309; Needham v. Smith, 4 Russ. 318; 1 Pow. Mortg. 190; Metcalfe v. Archbishop of York, 1 Mylne & C. 553; Field v. Mayor, etc., of New York, 2 Seld. [6 N. Y.] 179. The doctrine is too well settled to be now questioned.

We have therefore reached the position that the contract by which Graham mortgaged his crop for 1867 to Sillers was a valid and binding contract between the parties. It was also binding against those who had notice of it. The sole purpose of the contract was to give Sillers a lien superior to the claims of others, for without the contract, Graham's crop would have been liable to be seized in payment of his debt to Sillers. It is unnecessary to decide what effect as to notice the recording of the mortgage had, for the fact is admitted by defendants' answer that in February, 1867, they had actual notice, having read the contract and being furnished with a counterpart of it. The evidence is also clear to the point that defendants had this actual notice before they contracted with Graham and before his execution of a mortgage to them upon the same crop.

The next question is one of fact. Did Sillers in his conference with the defendants on the 6th of February, 1867, agree to release his lien upon Graham's crop secured by his lease and mortgage? The defendants aver in their answer that he did. This is new matter, not responsive to any allegation of the bill, and it is incumbent on defendants to establish it by proof. They have offered no evidence to support this averment. On the contrary it is flatly contradicted by Sillers, and Graham testifies that in his conference with defendants in February, 1867, it seemed to be the understanding of all parties that Sillers would have a lien on the crop for his rent. The conclusion from the testimony is therefore inevitable that Sillers did not agree with defendants to waive his lien upon the crop of Graham.

We have then reached this further ground, that Sillers having a contract with Graham, giving him a lien on Graham's crop, gave actual notice thereof to defendants, and did not waive his rights under his contract. His lien being older than the lien of defendants is superior in equity, and as between Sillers and defendants, Sillers had the right to have the crop of Graham applied first to the payment of the debt, secured by his lien.

The next question is, have the rights of Sillers been transferred to Ellett, the complainant? Unquestionably Ellett, on his purchase at the sheriff's sale of the "Asia" plantation, became entitled to all the rent which fell due after the date of his deed, whether it had or had not accrued before the sale, even without the transfer of the note given by Graham for the rent. But Sillers indorsed and transferred the note of Graham, secured by the mortgage, and delivered the mortgage itself to the complainant. According to all the authorities this transfer vests in the transferee the rights of the mortgagor to the security. The assignment of a note secured by a mortgage is in equity an assignment of the mortgage, unless there is some special provision of the parties to the contrary. Johnson v. Hart, 3 Johns. Cas. 322; Lawrence v. Knap, 1 Root, 248. So that a mortgagee who has assigned absolutely the note secured by the mortgage, need not be made a party to a suit by the assignee for payment of the note out of the mortgaged premises. Kent, J., in Johnson v. Hart, 3 Johns. Cas. 322. The complainant then stood in Sillers' shoes. He was entitled to have Graham's crop first applied to the payment of the note assigned to him by Sillers. His lien was the elder and better one. The defendants through their agent Ruhl, as the testimony abundantly shows, carried off the entire crop and appropriated its proceeds to their own use. Having done this with full knowledge of the prior lien, they must account to complainant for the value of the crop at the time of its asportation, with interest from that date. This is the rule of damages in trover and trespass de bonis asportatis, and should be applied here as the measure of the complainant's claim. The decree must be for complainant. If the parties cannot agree upon the amount, the case must be referred to a master to report upon that matter.