GRAND FORKS NATIONAL BANK, Respondent, *v.* MINNEAPOLIS AND NORTHERN ELEVATOR COMPANY, Appellant.

Chattel Mortgages — Validity — Crops — Registration — Notice.

> Under § 1704, C. C., § 4328, Comp. L., providing that "an agreement may be made to create a lien upon property not yet acquired by the party agreeing to give the lien, or not yet in existence. In such case the lien agreed for attaches from the time when the party agreeing to give it acquires an interest in the thing to the extent of such interest," a chattel mortgage given by one on crops to be grown on his land is valid, and when the instrument is properly witnessed and filed for record it is valid against creditors and subsequent purchasers of the mortgagor. It is not necessary that it should be refiled after the property comes into existence; it is sufficient if it was on file when their interest attached.

(Argued May 14, 1889; affirmed May 31; opinion filed October 9, 1889.)

APPEAL from district court, Grand Forks county; Hon. CHAS. F. TEMPLETON, Judge.

*Cochrane & Fisk,* for appellant.

Under our Code a mortgage cannot be given upon property not in existence. Comp. L., §§ 4803, 4351, 4356, 2675, 2676, 4346, 3229, 3606, 3242, 3611. These sections are but an epitome of the common law, and it is there well settled that such property cannot be sold or mortgaged. Cole v. Kerr, 26 N. W. Rep. 598; Lamson v. Moffett, 21 id. 62, 61 Wis. 153; Long v. Hines, 16 Pac. Rep. 339; Chapman v. Weimer, 4 Ohio St. 481 ; Whittel-

shoffer v. Strauss, 3 South. Rep. 524; Redd v. Burris, 58 Ga. 574, 15 Cen. Law. Jr. 233; Hutchinson v. Ford, 15 Am. Rep. 711; Farrar v. Smith, 64 Me. 77; Pettis v. Kellogg, 7 Cush. 456; Comstock v. Scales, 7 Wis. 138, 159; Chenoweth v. Tenny, 10 id. 341, 397; Farmers' L. & T. Co. v. Commercial Bank, 11 id. 207, 215; Loth v. Carty, 4 S. W. Rep. 314; Single v. Phelps, 20 Wis. 398, 419; Mowry v. White, 21 id. 417, 422; Hunter v. Bosworth, 43 id. 591; Low v. Pew, 11 Am. Rep. 357, 108 Mass. 347; Williams v. Briggs, 16 Alb. Law Jr. 387, 23 Am. Rep. 518; Jones v. Richardson, 10 Met. 481; Moody v. Wright, 13 id. 17, 46 Am. Dec. 706; Barnard v. Eaton, 2 Cush. 294; Chesly v. Joslyn, 7 Gray, 489; Milliman v. Naher, 20 Barb. 37; 23 Ill. 320; Long v. Hines, 19 Pac. Rep. 796; 10 Gray, 568; 8 Barb. 102; Duchess of Kingston's Case, 2 Smith L. C. 705; Looker v. Peckwell, 38 N. J. L. 253; Farmers' L. & T. Co. v. Long Branch Imp. Co., 27 Hun, 89; 3 Amer. & Eng. Enc. Law, 184.

Respondent will insist that the mortgage may be construed as a contract for a future lien, and that it is good under section 4328. This is merely the old equity rule which recognizes a contract for a future lien and enforces it between the parties. Beal v. White, 94 U. S. 382; McCaffery v. Woodin, 65 N. Y. 459; 1 Chitty, Cont. 528–530; Benjamin, Sales, §§ 78, 84; Long v. Hines, 19 Pac. Rep. 796.

Assuming it to be a contract for a future lien and binding between the parties, still no cause of action is stated. The law does not declare the filing of a contract for a future lien to be notice as against subsequent purchasers in good faith for value. There is no allegation that the appellant had any notice of respondent's claim. Barrett v. Fisch, 41 N. W. Rep. 310.

The complaint does not show that the contract for a future lien was ever carried into effect, so as to render it operative as a mortgage. 1 Schouler, Per. Property, § 421; Long v. Hines, 19 Pac. Rep. 796; Barrett v. Fisch, *supra;* Wade, Notice (2d ed.), §§ 119, 122; Mesick v. Sunderland, 6 Cal. 297; James v. Morey, 2 Cow. 246; Parret v. Shaubhut, 5 Minn. 323; Washburn v. Burnham, 63 N. Y. 301; Betzer v. Rankin, 77 Ill. 289; Graves v. Graves, 6 Gray, 391; Galpin v. Abbott, 6 Mich. 17; 4 Wait's

A. & D. 588; Frost v. Buckman, 1 Johns. Ch. 288; Smith v. Lawrence, 12 Mich. 431; Newell v. McLarney, 49 id. 232, 13 N. W. Rep. 529; Bassinger v. Spangler, 10 Pac. Rep. 810; Nicklin v. Nelson, 5 Pac. Rep. 51.

A mortgage is defined by our statute, and the form is prescribed by section 4372, contemplating the mortgage contract as executed. A contract for a future lien under section 4328 is by its terms executory, and there is as much difference between a mortgage and a contract for a future lien as between a sale and a contract for a sale. The differences have been defined; section 3607, as to a contract for a future sale, is a counterpart of section 4328, as to a contract for a future lien. And as the consummation of a contract for a future sale is only reached by the delivery of the property contracted to be sold, so is a contract for a future lien executed only by the delivery of the property when it comes into existence. Brown v. Pierce, *supra;* Lanfear v. Sumner, 17 Mass. 110; Long v. Hines, 19 Pac. Rep. 796.

It appears then there are two kinds of contracts, mortgages and contracts for future liens. As to mortgages it provides that the filing of them should be notice of their contents. As to contracts for future liens, that they are valid between the parties, but that when the property upon which it is given comes into existence, the contractee should reduce it to possession, else he is deemed to have waived the benefit as against subsequent purchasers. §§ 4379, 4380, 4657.

The respondent having had the privilege under this contract for a future lien to take possession of the property, or file his contract after the property came into existence, and having failed to either take possession or re-file the mortgage, the license should be deemed revoked so far as it concerns the interest of this defendant. §§ 4379, 4380; Jones, Chat. Mort., §§ 161, 164; Chase v. Denny, 130 Mass. 566; Moody v. Wright, 13 Met. 17, 46 Am. Dec. 706; Cole v. Kerr, 26 N. W. Rep. 599, 19 Neb. 553; Getting v. Nelson, 68 Ill. 591; Wood v. Leadbetter, 13 M. & W. 838; Blanchard v. Cook, 13 N. E. Rep. 91; Lamson v. Moffat, 21 N. W. Rep. 62, 61 Wis. 153; Comstock v. Scales, 7 id. 159; Chynoweth v. Tenney, 10 id. 397; Single v. Phelps, 20 id. 399; Farmers' L. & T. Co. v. Commercial Bank, 11 id. 207; Mowry

v. White, 21 id. 417; Farmers' L. & T. Co. v. Fisher, 17 id. 114; Hunter v. Bosworth, 43 id. 583; Farmers' L. & T. Co. v. Cary, 13 id. 110; Jones v. Richardson, 10 Metc. 481; Chesly v. Joslyn, 7 Gray, 490; 1 Parsons, Contract, § 525; Long v. Hines, *supra;* Seidenbach v. Riley, 19 N. E. Rep. 275; 3 Am. & Eng. Ency. Law, 185; Cook v. Cathrell, 11 R. I. 482, 23 Am. Rep. 518; Williams v. Briggs, 11 R. I. 476, 23 Am. Rep. 518, 22 id. 653, n.; Walkly v. Vaugh, 33 Conn. 577; Gregg v. Sanford, 24 Ill. 17; Chopen v. Cram, 40 Me. 561; Codman v. Freeman, 3 Cush. 306; Marks v. Robinson, 2 So. Rep. 292; Chase v. Denny, 130 Mass. 566; Mitchell v. Black, 6 Gray, 100; Griffith v. Douglas, 73 Me. 532, 40 Am. Rep. 395; Milliman v. Neher, 20 Barb. 37; Hutchinson v. Ford, 9 Bush, 318, 15 Am. Rep. 711; Roy v. Goings, 6 Bradw. 162; Barnard v. Eaton, 2 Cush. 294; Black v. Webb, 20 Ohio, 304.

The filing of this contract was no notice because the property was not in existence at the time the mortgage was made and filed. Jones v. Richardson, 10 Met. 463, 481; Jones, Chat. Mort. 157; Polk v. Foster, 7 Baxt. 100; Tedford v. Wilson, 3 Head, 311; Griffeth v. Douglas, *supra;* Long v. Hines, *supra;* Single v. Phelps, *supra;* Chapman v. Weimer, 4 Ohio St. 481; Cudworth v. Scott, 41 N. H. 456; Cressey v. Sabre, 17 Hun, 120; Halstead v. Bank, 4 Marsh. 554; Doswell v. Buchanan, 3 Leigh, 365, 23 Am. Dec. 281; Hutchinson v. Ford, 15 Am. Rep. 711; Wade, Notice, § 214; Buckingham v. Hanna, 2 Ohio St. 555; Loan & Trust Co. v. Maltby, 8 Paige, 361; Jackson v. Town, 4 Cow. 598; Faircloth v. Jordan, 18 Ga. 350; Calder v. Chapman, 52 Pa. St. 359, 91 Am. Dec. 163, 164; Hetzel v. Barber, 69 N. Y. 1.

The respondent obtained, at best, but an equitable title to the property after it came into existence, and the appellant having purchased and obtained possession of it, the legal title is in defendant and the equitable title of plaintiff cannot prevail over this legal title. Wells, Replevin, §§ 129, 105; Barrett v. Fisch, 41 N. W. Rep. 310; Whitcomb v. Hungerford, 42 Barb. 177; Hayland v. Budget, 35 Cal. 404; Marks v. Robinson, 2 So. Rep. 296; Wetzler v. Kelly, 3 id. 747; Mayer v. Taylor, 69 Ala. 403, 44 Am. Rep. 522; 4 Am. & Eng. Enc. Law, 903; 1 Smith Lead. C. 891*; Lanfear v. Sumner, 17 Mass. 110, 9 Am. Dec. 119; Lamb v. Du-

rant, 12 Mass. 54, 7 Am. Dec. 31; Thorndike v. Bath, 114 Mass. 118; Parsons v. Dickinson, 11 Pick. 352; Veazie v. Somerly, 5 Allen, 280; Brown v. Pierce, 97 Mass. 46, 93 Am. Dec. 57.

*McLaughlin & Noyes*, for respondent.

There is a conflict in the authorities as to such a mortgage as this; but under our Code " any interests in property which is capable of being transferred may be mortgaged." § 4351. " Property of any kind may be transferred, except as otherwise provided by this article." § 3224. " A mere possibility, not coupled with an interest, cannot be transferred." § 3225.

In other words, "a mere possibility, *coupled* with an interest, may be transferred." Did the mortgagor have a possibility, coupled with an interest? He certainly did. The complaint alleges that he was the owner, and in possession of this farming land. He then, necessarily, had an interest in the crops to be raised upon the land. The "possibility" was the power of the soil to produce the crop under any contingency; and the interest was vested by his ownership and possession of the land. He was then in position to execute this mortgage. § 4356, Comp. L.; Jones, Chat. Mort., §§ 140, 151; 1 Pars. Contracts, 523; Story, Sales, §§ 185, 186; Hearst v. Bell, 72 Ala. 340; Wittleshoffer v. Cross, 3 So. Rep. 534; Acques v. Wasson, 51 Cal. 620; Scharfenburg v. Bishop, 35 Ia. 60; Brown v. Allen, id. 305; Wheeler v. Becker, 68 id. 723, 28 N. W. Rep. 40; Norris v. Hicks, 38 N. W. Rep. 395; Oil Company v. McGinnis, 20 N. W. Rep. 85; Miller v. Chappel, 29 id. 52; Sanborne v. Benedict, 78 Ill. 309; Van Hooser v. Cory, 34 Barb. 9; 41 id. 404; White v. Thomas, 52 Miss. 49; Cook v. Steele, 42 Texas, 53; Smith v. Beatty, 31 N. Y. 542; McCaffrey v. Woodin, 65 id. 459; Apperson v. Moore (Ark.), 21 Am. Rep. 170; Smith v. Atkins, 18 Vt. 465; Rollins v. Hearst, 90 N. C. 270; Wyatt v. Watkins (Tenn.), 16 Alb. L. J. 205; Everman v. Robb, 52 Miss. 653; Headrick v. Brattain, 63 Ind. 438; Pennock v. Coe, 23 How. 117; 16 Law. Ed. 436; Butt v. Ellet, 19 Wall. 544; 22 Law. Ed. 183.

The registration of a mortgage upon an unplanted crop in the

proper office is notice, and an averment of such registration is equivalent to an averment of notice. Wittleschofter v. Strauss, 3 So. Rep. 524; Smith v. Fields, 79 Ala. 335; Miller v. Chappel, 29 N. W. Rep. 52; Wheeler v. Becker, 28 id. 40; Wyatt v. Watkins, 16 Alb. L. J. 205; Hurst v. Bell, 72 Ala. 340; Duke v. Strickland, 43 Ind. 494.

It is not claimed the chattel mortgage should be construed as a contract for a future lien. It is what it purports to be: a chattel mortgage upon property existing in potentiality; that its subject was a possibility coupled with an interest in the mortgagor, and as such, was the subject of a valid mortgage under section 3225, C. C.

TRIPP, C. J. This is an action of conversion brought by the Grand Forks National Bank to recover of the Minneapolis & Northern Elevator Company the value of about one thousand bushels of wheat, alleged to have been purchased by the defendant of one Rogers, the mortgagor of this plaintiff. The complaint, in substance, alleges, after setting out the incorporation of plaintiff and defendant, that the said Rogers, on the 4th day of March, 1887, being indebted to the plaintiff in the sum of $240, at the county of Grand Forks, in said territory, made, executed, and delivered to the said plaintiff, his, the said Rogers', promissory note for the said sum of $240, with 12% interest thereon, payable November 1, 1887, and that, to secure the payment of such amount, at the said time and place, he made, executed, and delivered to the said plaintiff his chattel mortgage upon certain personal property, consisting of several horses herein particularly described, and also upon certain crops to be grown upon the land of said Rogers, and described in said mortgage as follows: " All the crops of every name, nature, and description which have been or may be sown, grown, planted, cultivated, or harvested during the years A. D. 1887 and 1888, and until said debt is fully paid, on the following described real estate, to-wit: The north-west quarter of section 17, and the south-east quarter of section 17, township 149, range 51,"— which mortgage was filed with the register of deeds of said Grand Forks county, March 5, 1887, and is set out in full as an exhibit, and made a part of the complaint, no part of which mortgage debt has been paid.

The complaint further alleges the growing and harvesting a large amount of wheat on the said lands during the year 1887, and the sale to this defendant of one thousand bushels thereof on the 15th day of September, 1887, and demands judgment for the value of the wheat so received and sold by the defendant.

The defendant demurred to the complaint, and the demurrer having been overruled by the court, and the defendant having elected to stand upon his demurrer, final judgment was entered for the amount due the plaintiff on the note and mortgage, from which judgment the defendant appealed to this court.

It is conceded by the parties that the crop of wheat sought to be mortgaged had not been sown at the time of the making or the filing of the chattel mortgage in question; and it is further conceded that the defendant had no other or further notice of plaintiff's claim to the property than that conveyed by the filing of the mortgage on March 5, 1887; so that the simple question presented to the court is, was this mortgage upon crops to be grown upon the land of the mortgagor, made and filed prior to the planting thereof but remaining on file thereafter, valid, as against this defendant, without actual notice to him of the existence of said mortgage?

The proposition is susceptible of division into two parts: *First*, was such a mortgage valid between the parties? *Second*, was it valid as against this defendant, or, in other words, did the record of such a mortgage impart notice to him? At common law the mortgage conveyed the title; and, as a mere expectancy or property not *in esse* could not be conveyed, it could not be mortgaged, and the mortgage of goods not then owned by the mortgagor was held not to cover such property, though subsequently acquired by him. Jones v. Richardson, 10 Metc. 481; Otis v. Sill, 8 Barb. 102. This rule of the common law, which is still adhered to, became subject to many exceptions, and, on the theory of potential existence, the chattel mortgage became extended to a large class of cases in which the property had no actual or certain future existence,— such as the wool to be grown from certain sheep, the butter to be manufactured from the milk of certain cows, the grain to be harvested from growing crops, and even, in some cases, the crops to be sown and harvested on certain described

lands. Van Hoozer v. Cory, 34 Barb. 9, 12; Corrderman v. Smith, 41 id. 404; Arques v. Wasson, 51 Cal. 620; Robinson v. Ezzell, 72 N. C. 231; McCaffrey v. Woodin, 65 N. Y. 459.

These cases proceeded upon the theory that a person having a present ownership of the means of producing was the owner of the future product. Much skill and learning is displayed in the decisions of the courts in determining whether the facts of the given case bring it within the rule. Many other exceptions grew up in which the strictness of the common-law rule became much modified; and, as the chattel mortgage came more and more into use in the commercial world by force of statutes and modern decisions of the courts, the harshness of the rule has greatly disappeared. The maxim of Lord BACON, that "although a disposition of after-acquired property is altogether inoperative, yet such disposition may be considered as a declaration precedent, which derives its effect from some new act of the party after the property is acquired," has been applied by the courts in its fullest effect to mortgages at law. Courts of law have been disposed to treat such mortgages as declarations in regard to future interests, and valid as such between the parties. The earlier cases required some affirmative act on the part of the person to be affected thereby after the happening of the event upon which the contract was based, and generally such new act to ratify the original contract must have been in furtherance of it, and with an apparent intention that the original agreement should be treated as then in force. Jones v. Richardson, 10 Metc. 481; Head v. Goodwin, 37 Me. 181. Later, the courts were inclined to allow that the declaration of the mortgage, permitting the mortgagee to take possession of the property upon condition broken, could be enforced without any assent of the mortgagor after default, and that upon possession so taken by the mortgagee the lien of the mortgage attached, and the contract became valid as one of pledge. This doctrine proceeded upon the theory that the agreement contained in the mortgage was a continuing one until it was canceled or revoked by the mortgagor, and that the mortgagee, acting lawfully under such license, obtained a valid lien as pledgee as soon as he reduced the property to possession; and some of the cases have gone so far as to intimate that such power may be irrevocable. Wood v.

Leadbitter, 13 Mees. & W. 838 ; Wood v. Manley, 11 Adol. & E. 34; McCaffrey v. Woodin, 65 N. Y. 459.

In equity, however, a different rule has always obtained from the one at law. The title to the mortgaged property never passed to the mortgagee, but the interest of the mortgagee was considered as a mere lien — an equitable interest — which would prevail over creditors and subsequent claimants, although the mortgagee had done no act to reduce the property to possession, and though he had done no new act to perfect the lien after the property had been acquired or came into existence ; the theory of this doctrine being that the mortgage upon future property is a continuing agreement, which attaches to the property immediately upon its coming into existence, and adheres to it for the benefit of the mortgagee, in accordance with the familiar principle that " equity considers that done which ought to be done." This equitable doctrine as to mortgages comes to us from the civil law, which declares : " Not only goods in present possession, but even goods in reversion, are comprehended under a general pawn or *hypothèque* — as grain in the ground, a ship to be built, with the timber pledged—if there be a cause inserted to comprehend it. An *hypothèque* may be an assurance of a thing to be delivered hereafter." Dom. Civil Law, bk. 3, tit. 1, § 1; Ayl. Pand. bk. 4, tit. 18. The doctrine was early adopted by our American courts. In Mitchell v. Winslow, 2 Story, 644, Judge STORY says : " It seems to me a clear result of all the authorities that wherever the parties, by their contract, intend to create a positive lien or charge, either upon real or upon personal property, whether then owned by the assignor or contractor or not, or if personal property, whether it is then *in esse* or not, it attaches in equity as a lien or charge upon the particular property as soon as the assignor or contractor acquires title thereto against the latter, and all persons asserting a claim thereto under him, either voluntarily or with notice, or in bankruptcy." In that case a mortgage of all the tools and machinery in a cutler's shop, together with all that might be manufactured or purchased within four years, was held to be a good, equitable, lien, and protected as such under the bankrupt act; and while this case has been criticised by the supreme court of Massachusetts (Moody v. Wright, 13 Metc. 17, 30), and some others of

the states have declined to follow it (Barnard v. Eaton, 2 Cush. 294; Hunter v. Bosworth, 43 Wis. 583; Chynoweth v. Tenney, 10 id. 397), yet it may be said to be at the present time the generally established American doctrine. Beall v. White, 94 U. S. 382; Butt v. Ellett, 19 Wall. 544; Pennock v. Coe, 23 How. 117; Brett v. Carter, 2 Low. 458; Apperson v. Moore, 30 Ark. 56; Schuelenburg v. Martin, 2 Fed. Rep. 747; Robinson v. Mauldin, 11 Ala. 977; Floyd v. Morrow, 26 id. 353; Gregg v. Sanford, 24 Ill. 17; Scharfenburg v. Bishop, 35 Ia. 60; Phelps v. Murray, 2 Tenn. Ch. 746; Cook v. Corthell, 11 R. I. 482; Ellett v. Butt, 1 Woods, 214.

This doctrine, announced by Judge STORY in Mitchell v. Winslow, *supra*, was reviewed and affirmed in the leading case of Holroyd v. Marshall, 10 H. L. Cas. 191, which arose upon a mortgage of certain machinery and implements described in the schedule, and all other machinery and implements which should, during the continuance of the security, be placed on the premises described in the mortgage in addition to, or in substitution for, those enumerated in the schedule. The proceeding was in equity, against a judgment creditor who had levied on the after-acquired property. In the lower court Lord CAMPBELL held that, as the mortgagee had done no act to reduce the property to possession after it had been acquired, and prior to the levy, the equity of the mortgagee must give way to the legal rights of the creditor; but the decision of the lower court was reversed in the house of lords, and the doctrine announced by Judge STORY fifteen years before was affirmed by the English court in a decision which has ever since been regarded as settling the law on that subject.

The equity rule in regard to mortgages was adopted by the codifiers, and has been embodied in our statute. The mortgage no longer conveys title to property either real or personal, but is a mere lien thereon (§§ 4330, 4331, Comp. Laws); and, by provision of section 4328, Comp. Laws, "an agreement may be made to create a lien upon property not yet acquired by the party agreeing to give the lien, or not yet in existence. In such case the lien agreed for attaches from the time when the party agreeing to give it acquires an interest in the thing to the extent of such interest." By this section not only is an agreement to

create a lien upon property not yet in existence valid, but the lien contracted for attaches the moment that the interests of the party himself attach. There is no *interim* of time for hostile interests to intervene. There is no delay provided for within which the tenor is required to obtain a new or more formal instrument or contract of lien, or within which he must obtain from the other party a ratification of the original agreement, or reduce the property to actual possession under the contract already made. Under this statute the original contract, *ipso facto*, immediately upon the requirement or creation of such property, awakens and brings into life the lien agreed upon. As between the parties themselves, no further action is necessary or required to be done. This section is the same as that of the proposed Civil Code in New York, and appears to have been founded upon the case of Seymour v. Railroad Co., 25 Barb. 285. That was a proceeding to foreclose a mortgage upon the defendant road, and the defense by adverse claimants to certain of the property was that the mortgage, at the time of its execution and record, covered only a small portion of the property sought to be subjected to its lien, and that as to such after-acquired property the mortgage was invalid as against creditors of the road. It appears from the case that only a portion of the road had been constructed when the mortgage was made and recorded; that a large portion of the right of way was subsequently acquired, and the road-bed, depots, warehouses, and other appurtenances were a long time thereafter built, erected, and constructed upon and along the same. The case was elaborately argued, and the decision of the court by E. DARWIN SMITH, J., reviews the cases at length. It was contended in that case, as in this, that the instrument called a "mortgage," as to after-acquired property, was, at most, but an agreement to mortgage; that it was not itself a mortgage, and could not, by its execution or record, create a lien upon the defendant's property not then in existence, as against other creditors; that such agreement must be carried into execution by the making and recording of a mortgage subsequent to the creation and ownership of the property sought to be subjected to its lien; but the court, referring to the cases which seem to support such a doctrine, says: "If the learned judge means by this that a sale, assignment, or mortgage of prop-

erty not *in esse*, or of contingent interests or expectancies, confers no title or interest in the thing *in præsenti*, that is self-evident; but if it is meant that the sale or assignment of such property, to be acquired *in futuro*, or of contingent interests or expectancies, rests in contract merely till some new assurance, and does not attach as a lien or charge as soon as the property is acquired, or has substantial existence, I cannot agree with him. As soon as the property is acquired or comes into existence, the lien in or upon it attaches. They come into being together, and coexist." This case has been cited and approved by many later cases in New York; and while mortgages upon railway property, filed before completion thereof, have been sustained by the courts upon other grounds, as that of public policy, the court in this case puts the right of recovery solely upon the equitable right of the mortgagee to hold under the original contract, without subsequent ratification on the part of the mortgagor, or any affirmative act on the part of the mortgagee, even as against creditors of the mortgagor. The case is cited and relied upon by the original codifiers, and the equity rule announced in that case has become the law of this territory, both upon the law and equity side of the court.

It is contended, however, that the equity rule, as announced by our statute, extends only to parties and those having notice of the existence of the agreement; that this defendant could not be charged with constructive notice of the filing of such contract of lien; and that to charge it with such notice it was incumbent on the plaintiff to file such mortgage at the time of, or subsequent to, that when the lien attached. It is conceded in this case that the instrument had all the statutory requirements to admit it to be filed — that is, it was signed, witnessed, and executed in accordance with the statute; and the only question is, was the filing of it prior to the attachment of the lien which made it a mortgage in effect, and keeping it on file thereafter, a valid filing? There is no provision of our statute that requires the filing of a chattel mortgage to be made at any particular time with reference to its making or delivery. The only provisions bearing upon this question are those found in sections 4379, 4380, Comp. Laws, which read as follows: "A mortgage of personal property is

void as against creditors of the mortgagor, and subsequent purchasers and incumbrancers of the property in good faith, for value, unless the original, or an authenticated copy thereof, be filed by depositing the same in the office of the register of deeds of the county where the property mortgaged, or any part thereof, is at such time situated.

The filing of a mortgage of personal property, in conformity to the provisions of this article, operates as notice thereof to all subsequent purchasers and incumbrancers of so much of said property as is at the time mentioned in the preceding section situated in the county or counties wherein such mortgage or authenticated copy thereof is filed." Clearly these sections do not make void or invalid an instrument filed before or subsequent to its delivery or inception as a mortgage, so that it be properly filed before hostile interests attach. The statute does not require a filing of the mortgage to give it validity, as in some states. The requirement of the filing is to cut off rights of innocent third parties. Between the parties to the instrument the mortgage is valid, though never filed.

If, as claimed by the defendant, the mortgage must be filed in the office of the register of deeds of the county where the property is situated at the time it is made, this mortgage would come within such requirement, since it was not a mortgage until the lien attached by the bringing into existence of the property enumerated therein; and at such time it was already filed, and prior to any rights accruing to this defendant. Suppose, under this rule of our statute, A., having in his possession the material from which certain machinery was to be constructed, should contract with B., the owner thereof, for a pledge of such machinery, so to be constructed, as security for the performance of some obligation on the part of B., would it be contended that upon the construction of such machinery it would be necessary for A. to surrender the possession to B., and again retake it, before the lien of the pledge would attach? Yet that is precisely what is contended for here. In the case of the pledge, A. has possession of the machinery at the time when, under the statute, the lien attaches as between the parties. He also has such a possession as, under the statute, is notice to third parties, and the law will not require

the useless thing of surrendering such possession, that it may be again delivered to him under the pledge. No more was it necessary for this plaintiff, whose contract for a mortgage had all the essentials of a mortgage except the attachment of the lien, to withdraw from the files of the register such instrument, and return it again to his control. It is the fact that the instrument is on file when hostile rights seek to attach that gives the filing effect, rather than the fact that such filing was made at some particular date. It is not the indorsement of the date, and signature of the proper officer, upon an instrument, that makes the filing. Such act is mere evidence or memoranda of the fact of filing. The filing is a continuous act. It is the fact of being on file — that is, among the files or records of the office — that gives it validity as against third parties. Every such paper is continuously filed every day that it remains in the office of the custodian thereof. The date of filing is but the date of the commencement of the filing. This mortgage was filed, in contemplation of law, every day it remained on file in the office of the register of deeds after the property came into existence; and it was filed in such office on the day the lien attached to the growing crop. The proposition is by no means a new one. Persons who have conveyed real property, with covenants of warranty to which they had at the time no actual title, when subsequently they have acquired such title, *eo instanti* convey such title by operation of law to their grantee. No hostile interests can intervene. The person recovering such subsequent title cannot convey it, and the record of the former conveyance is a good record to all the world of the title which has been subsequently conveyed by operation of law. Section 4351, Comp. Laws, provides that the "title acquired by the mortgagor subsequent to the execution of the mortgage inures to the mortgagee as security for the debt in like manner as if acquired before the execution." Will it be contended, under this statute, that when such subsequent title is inured to the mortgagee he must withdraw his mortgage from the files, and refile the same?

What we have here said, and the questions determined in this case, have no reference to instruments and contracts not properly executed, so as to admit them to be filed of record, nor to instruments that may be filed in the county where the property was not

situated when the mortgage was made or its lien attached. We simply hold that, under our statute, a mortgage of personal property to be acquired or created in the future, duly executed, and filed in the office of the register of deeds of the county in which such property is situated before and at the time of its creation or acquirement, becomes thereupon a good and valid mortgage between the parties and all subsequent purchasers and incumbrancers, without further ratification on the part of the mortgagor, or any affirmative act on the part of the mortgagee, subsequent to the attachment of the mortgage lien.

The judgment of the lower court is, therefore, affirmed. All the justices concur except TEMPLETON, J., not sitting.