## SAVINGS BANK OF LARCHWOOD V. CANFIELD *et al.*

Where, under a tenant's contract, the title, ownership, and possession of the crops are to remain in the landlord, and all indebtedness due him for advances is to be deducted from the tenant's part before division, the tenant's mortgage of ungrown crops passes no title to his mortgagee, if he subsequently fails to request a division and delivery to himself or any part of the crop.

(Opinion filed January 10, 1900.)

Appeal from circuit court, Minnehaha county. Hon. J. W. JONES, Judge.

Action by the Savings Bank of Larchwood against George W. Snook for the conversion of certain wheat. From a judgmen for defendant, plaintiff appeals. On death of defendant, E. H. Canfield and Joseph L. Snook, executors, were substituted. Affirmed.

The facts are stated in the opinion.

*Davis, Lyons & Gates*, for appellant.

The unrecorded lease under which respondent claims was in effect a chattel mortgage. Conway v. Alexander, 7 Crouch. 238; Odell v. Montroes, 68 N. Y. 499; 1 Jones Mortgages 258; Hughes v. Sheaff, 19 Iowa 335; 1 Cobbey Chat. Mort. 112; Lanson v. Moffat, 61 Wis. 153; Greeley v. Winsor, 45 N. W. 325; Essham v Hotel Co., 63 N. W. 229; Peet v. Ins. Co., 64 N. W. 206; 6 Am. & Eng. Enc. of Law, 444. As such a mortgage it would take priority, when considered with other mortgages upon the same property, only in the order of its recording. Comp. Laws, § 4379.

The lease was either a chattel mortgage on the crops or a conditional sale of the crops. The latter theory was adopted by the trial court and the cause decided in favor of the respondent upon the authority of Con. Land and Ir. Co. v. Hawley, 7 S. D. 229. The principles of that case have no application here. Robbin v. Palmer, 67 N. W. 949.

But even if the lien of respondent for advances was good as against appellant, it would not be good for contracted indebtedness. Roth v. Williams, 45 Ark. 447.

*E. H. Canfield*, for respondents.

Fuller, P, J. This action, for the conversion of wheat claimed under a chattel mortgage, resulted in a judgment

in favor of George W. Snook, and plaintiff appeals.    Since the entry of judgment, and appeal to this court, said George W. Snook has died; and his executors, E. H. Canfield and Joseph L. Snook, have been substituted as defendants and respondents by an order of this court duly entered.

'On the 18th day of January, 1897, Gust Hultman executed the mortgage relied upon, to appellant, covering two-thirds of all crops of that season to be raised on certain lands belonging to George W. Snook, which under an agreement, he had culti- vated for a number of years.    On the 30th day of March fol- lowing, said Hultman and George W. Snook entered into a con- tract for one year from January 1st, 1897, by which the former, as a party of the first part, bound himself to perform all the labor in a manner designated, ''and to plant and sow only such crops as the second party shall direct.    *   *   *   The title, ownership, and possession of all the hay and crops of every kind and character raised or produced upon said premises shall be and remain in the party of the second part.    In considera- tion of the faithful and thorough performance of, all and singular, the several stipulations and covenants in this instru- ment contained, by said party of the first part, the party of the second part hereby agrees, upon reasonable request thereafter made, to give and deliver to said first party, upon the premises or elsewhere, as herein provided, two-thirds of the crop so raised and secured upon said land during each year of the term, after first deducting therefrom all advances and indebt- edness owing by said party of the second part for any cause whatsoever, including the sum of any and all seed-grain liens upon the crops claimed and filed by third persons; and all such claims and indebtedness shall be considered matured at the

date when threshing shall begin, whether then due by their terms or not; and any amount remaining unpaid under the above provisions shall draw interest at the rate of seven per cent. per annum, and, if any action is brought to collect such balance, the first party will pay reasonable attorney's fees." Having failed, in many material particulars, to perform the labor required by this instrument, and to pay certain stipulated expenses, which, with an existing indebtedness to said Snook, aggregating much more than the crop, Hultman never asked for a division, or a delivery of any part thereof to himself, and the former applied the same in strict conformity with the terms of the contract.

The following conclusions of law found by a referee were adopted by the court: "That the title to the grain, or any part thereof, grown and raised on said lands and premises during the year 1897, had not, at the time this suit was commenced, passed to the said Hultman; that the said plaintiff did not acquire a lien upon the said crop, or any part thereof, grown and raised upon said lands by the said Hultman during the year 1897; that the said defendant was entitled to hold and retain possession of the said grain grown and raised upon said lands and premises during said year of 1897, and to apply the undivided two-thirds thereof towards the payment of said indebtedness of said Hultman to the defendant, and the payment of said advances made by said defendant to said Hultman during the year 1897, notwithstanding plaintiff's said mortgage; that the defendant is not liable to the plaintiff for the conversion of said wheat, nor any part thereof."

At the time appellant's mortgage was made, no lien was created, because none of the grain mentioned therein yet exist-

ed; and no lien could ever attach, unless Hultman, the mortgagor, subsequently acquired such property, or some part thereof, by reason of this contract. Comp. Laws, § 4328; Grand Forks Nat. Bank v. Minneapolis & N. Elevator Co., 6 Dak. 357, 43 N. W. 806. · It was expressly agreed that the title, ownership, and possession  *  *  *  shall be and remain in the party of the second part;" and as a basis of calculating Hultman's compensation, if any, in excess of what he might owe Snook when threshing began, two-thirds of the crop was mentioned, with the stipulation that any indebtedness beyond the value thereof should draw interest at the rate of seven per cent per annum, together with reasonable attorney's fees if action should be brought to collect the balance. In the case of Irrigation Co. v, Hawley, 7 S. D. 229, 63 N. W. 904, we said, concerning a contract more favorable than this to the cropper, that: "These were proper subjects for agreement between the parties, and there can be no doubt as to their intention. Their legal effect, as declared in many cases, was to leave the legal title and control of the crops in the lessor until the lessee's covenants to him were fulfilled, or the crops divided. By their express stipulation, they agreed between themselves that they should not be joint owners of the crops, but the lessor should hold and own them until a division was made." Had Hultman actually performed, "all and singular, the several stipulations and covenants," it was not contemplated that he should have the right to demand from the owner two-thirds of the crop, but all existing indebtedness was to be first deducted therefrom, if the value thereof was found sufficient; and the fact that he never demanded anything clearly indicates that both parties understood the import of their agreement. Our conclusion is that Hult-

man never acquired an interest mortgageable either to appel lant or Geo. W. Snook, and the judgment appealed from is affirmed.