## ELLIS v. LOCKETT, trustee.

1. Where a suit was brought by a vendor against a vendee for the purchase-money of land of which the defendant was in undisturbed possession under a deed from the plaintiff, and an essential element of a defense which the defendant attempted to set up by special pleas was want of title in the plaintiff at the time such deed was executed, and the pleas in question did not by their allegations affirmatively show such want of title, there was no error in striking them on demurrer.

2. If in point of fact it was understood and agreed between the vendor and the vendee that the latter was to receive a title of a particular kind and character, as, for instance, a title which would be pronounced good and "merchantable" by any reputable attorney in a named city, and if the defendant actually purchased upon the faith of representations that the deed in question would operate to pàss to him just such a title, which representations proved to be false, pleas attempting to set up a defense based upon these alleged grounds, but which failed to state them with the requisite clearness and distinctness so as to present issues for determination by a jury, could not be made available to defeat a recovery by the plaintiff— the pleas not otherwise alleging anything showing that the defendant's title under the deed would not be good.

3. If in the contract between the vendor and the vendee it was stipulated that the deed which the vendee was to receive should contain a specified warranty, and the latter accepted it and went into possession under it without such warranty, he could not afterwards set up the fact that the deed failed to contain the stipulated warranty, in defense to an action for the purchase-money.

Argued February 25,—Decided March 29, 1897.

Foreclosure of mortgage. Before Judge Felton. Bibb superior court. April term, 1896.

J. W. Lockett, trustee of Fannie Lockett, brought his petition against William Lee Ellis, to foreclose a mortgage made to secure the payment of certain promissory notes given by Ellis for part of the purchase-money of certain realty in the city of Macon, bought by him from the plaintiff. Ellis filed several pleas which were stricken upon demurrer upon the ground that they set forth no legal issue upon which the court could pass. They contained the following allegations:

At the time and before he bought the land in question and paid a part of the purchase-money thereon, he asked plaintiff's agent and attorney, with whom he was dealing and from whom he bought the land, as to how were the titles to it; and said agent and attorney assured him that they were perfectly good and straight, that there was no need.

for him to employ an attorney to examine them, as he could
assure him that they were all right.    Acting entirely upon
these representations and assurances from said agent and
attorney, he bought said lands, paid said agent and attorney
$2,500 cash, and delivered to him the mortgage and notes,
without having the title examined.    These representations
and assurances induced him to believe that said agent and
attorney had examined the titles, and this was known to
said agent and attorney at the time.    But for these assur-
ances and statements, he would have and intended to have
the title examined by some attorney.    He is not an attorney,
and is not capable of examining the titles to a piece of land
so as to tell whether they are good or defective; and this
fact was known to plaintiff, his agent and attorney, at the
time.    Said statement, representation and assurance were
made by said agent and attorney, as defendant believes,
recklessly and without examination of said title, and with
knowledge of the confidence that defendant had in him, in
his great legal ability, knowledge and opinion as to the
titles; defendant believing at the time from said assurances
and statements that said agent and attorney had fully and
carefully examined the titles to the land and was thoroughly
familiar with the same, and that said title was perfectly
regular and straight in every particular on the records of
said county.    He has always had the greatest confidence
in said agent and attorney, and in his legal ability and opin-
ion; and it was solely upon his said representations, acting
as agent and attorney of plaintiff, that defendant bought
the property for the full and fair price of $11,500, paid the
$2,500, and gave the notes; and by these statements and
assurances of said agent and attorney he was dissuaded
from having the titles examined as otherwise he intended
and would have done.    Very recently he has had said
titles examined as far as the same could be done, and finds
the same irregular and defective on the records of this court;
and having had but very few of the title deeds of said land

in his possession, he can only speak of it as it appears on the records. It cannot be traced on the records further back than a few years; if the chain of title is good and regular, the deeds must have been hidden away, lost or destroyed without being recorded; there is no evidence that said deeds ever had existence at all; the title is clouded, irregular, defective, and one mass of uncertainty and chaos; it would be impossible for him to show any purchaser a clear and undoubted title; had he known or suspected, at the time he was bargaining for the land, that the titles were in the condition in which he has discovered them, he would not have purchased at all; the titles being in such defective condition, the land is thereby rendered unsalable and of little if any market value; the titles are in the same condition as when he bought the land from said agent and attorney, and being in said condition, defendant is not able to sell the same or to borrow money on it as security; if the land was of value at all at the time he purchased it, it was, by reason of the condition of its titles, several thousand dollars less valuable in its selling and in its borrowing value than $11,500; and had he bought it at all, it would have been at a reduction of several thousand dollars from said sum, though he asserts and believes he would not have bought it at all, as it would have been of little or no value to him, as he could not sell it except on his own warranty of title, and then only at a sum very much less than $11,500, and could not have borrowed on it, since no lawyer of reputation and standing would have recommended and approved the titles. Where the title to a tract or parcel of land situated in the part of Macon where this lot was located, and having on it as valuable improvements as this lot has, is in the condition in which the title to this lot is, it is practically unsalable, and even when it can be sold at all, it will bring only a small part of the amount it should and would bring were the title straight, regular and good on the records of deeds in Bibb superior court; and this fact was known to plaintiff, his

agent and attorney at the time of the sale of the land to defendant. It is the universally understood rule among the attorneys of Macon who examine titles, that, for a title to real estate of the value and location of said lot to be called and considered good, the records or original title deeds must show an unbroken and perfect chain of title from the city of Macon (this being considered and recognized as the real and true basis or starting point of a good title), or for a period of forty or more years; and when the title to a piece of real estate of the value and location of said lot can be traced on said records or by the original title deeds for a period of only from fifteen to twenty-five years, unless said title runs into the city of Macon as the starting point, it is considered and pronounced bad and is rejected; and this fact was known to said agent and attorney at the time he made to defendant said statements and representations from which defendant understood that he was buying what was and is understood in Macon as a good and straight title, and what any good lawyer in said city would have so pronounced. He is advised and believes that the order of court, a copy of which is exhibited, under which the deed from plaintiff to him was made, is defective and illegal, is insufficient to authorize plaintiff to convey to him whatever title plaintiff held at the time, and does not authorize him to make to defendant a warranty deed as he did, such being the only kind of deed defendant would have accepted even were the titles all right. This order of court was got by said agent and attorney before he made to defendant said statement and assurance which was intended and did cover and exclude [include?] said order of court. Plaintiff is not a resident of Georgia; both he and his cestui que trust are residents of the District of Columbia; and though it should be adjudged that plaintiff was authorized to bind his cestui que trust by the warranty deed so made, yet because of said non-residence it would put defendant to the greatest trouble and inconvenience to sue the trustee and cestui que trust in a dif-

ferent part of the country, if he should be ousted of the property and should have to sue upon a breach of warranty. The trustee and cestui que trust have no property other than this lot in said county and State, as defendant believes; neither would a judgment on said breach or warranty, as he is advised, be good or collectible against them in their place of residence. These facts and circumstances and said statements, assurances and representations operated upon defendant as a legal fraud. He prays that the sale be rescinded and the mortgage and notes be cancelled on his making to plaintiff a deed without warranty to the land, which he is ready and offers to do; and that he have judgment against plaintiff for the sum paid by him on the lot, with interest, less a fair and just rental for the property, and such accounting as is legal and just in every particular, and general relief.

Exhibited is an abstract of the title as shown by the records in the office of the clerk of Bibb superior court, viz: (1) City of Macon to Robert Collins, February 14, 1837; recorded August 21, 1840. (2) Robert Collins to William Cook (quitclaim), March 1, 1839; recorded August 21, 1840. (3) Thad G. Holt, Jr., to Francis Lake, May 5, 1873; recorded April 3, 1874. (4) Sheriff of Bibb county (for Francis Lake) to Asher Ayers, June 5, 1877; recorded August 7, 1877; reciting sale under mortgage fi. fa., but no fi. fa. recorded with deed, though found by plaintiff since this suit began. (5) Asher Ayers to J. W. Lockett, trustee, February 2, 1881; recorded February 3, 1881.

From the record exhibited of the proceedings under which the order for sale of the property was obtained by plaintiff, it appears that on May 30, 1891, he as trustee brought his petition to the judge of the superior court of Bibb county, describing the land as in the petition in the present case (except that, by seeming clerical error, the word "lot" is used instead of the word "alley" in one place where occurs the expression, "said alley being ten feet wide").

It is further stated in the petition of the trustee, that the lot is the same as was conveyed to the trustee for [by] Asher Ayers on February 2, 1881, and that under the terms of said deed the property was held by petitioner under trust for the sole and separate use of Mary B. Lockett, wife of petitioner, now dead and intestate, leaving no debts; that of the two children of the marriage one is dead intestate, and the only issue of the marriage now left is Fannie Lockett, about twenty years of age, the daughter of petitioner; that he has bargained the property to Ellis for $11,500, one fourth cash and the balance in four annual installments, which he is advised is a fair market price for the property; that his daughter will continue her residence with him in the city of Washington, and it is desirable to sell the property as she will soon be of age, when she will desire to come into actual possession of the proceeds arising from the sale. He prays for the appointment of a guardian ad litem for her, to answer under oath as to the advisabilty and justice of the sale; that she be served with a copy of this petition, with the privilege of acknowledging service thereon; and that thereupon an order be passed authorizing petitioner to sell the property at private sale, which can be done upon the trust in which the property is held. Thereupon it was ordered that Fannie Lockett be served or acknowledge service as prayed, and upon such acknowledgment being exhibited to the court, that Joseph Bond be appointed guardian ad litem for her and make answer under oath. She thereupon acknowledged service of a copy of the petition, with the further statement that, so far as she could do so, she joined in the said petition and asked that it be granted. Another order, reciting that it appeared that Fannie Lockett had been served with a copy of the petition, directed that Bond be appointed guardian ad litem for her and represent her in this application. The guardian ad litem answered under oath, that he was familiar with the property, and believed it for the best interest of the cestui que trust that the same

be sold in the manner and at the price named in the peti-
tion. Thereupon the order prayed for was granted by the
court, with direction that the trustee make bond for titles
to the purchaser, or execute title to him and take mortgage
for the balance of purchase-money after the cash payment,
as should seem best for the trust estate, holding the proceeds
subject to the same trusts; and that he make report of the
same as required by act of 1887. On January 4, 1892
(which is the date of defendant's mortgage to plaintiff), the
trustee brought his petition, reciting the passage of the last
mentioned order, and stating that, owing to the general
financial depression in the community, he had not been able
to make the sale he had in view when said order was granted,
but that Ellis had agreed that if the terms of said postponed
sale were modified as hereafter set forth, he would be ready
to conclude the contract of sale instanter. It was prayed
that said terms be so modified that petitioner could sell to
Ellis the property on terms of $2,500.00 cash and the bal-
ance in four installments falling due three, four, five and
six years after date, and bearing interest, a deed to be made
to him, and said four installments to be secured by notes
and mortgage; it being greatly to the benefit of the cestui
que trust that the order be so modified. Accompanying
this petition was an affidavit of Bond, the guardian ad litem,
of Fannie Lockett, that he had read the petition for modi-
fication of the order of sale, and that he was advised and
believed, and stated on oath, that the modification as prayed
for would be for the best interest of Fannie Lockett; and
he joined in the prayer for said order.

Exhibited with one of the amendments to the plea is the
deed from Ayers to Lockett, trustee, which contains the
following words creating the trust: "To have and to hold
the aforegranted premises to the said James W. Lockett
and his successors, in trust nevertheless for the sole and
separate use of Mary G. Lockett, wife of the said James
W. Lockett, for and during her natural life, and after her

death to her children by her present or any future husband, and the representatives of any such children who may have died, share and share alike, the representatives of children taking the interest of their deceased parent; with power to the said Mary G. Lockett, if she shall die without children or the representatives of children living at her death, to dispose of the said property by will; and with power also to the said Mary G. Lockett by writing under her hand to empower the said James W. Lockett, without an order of court, to sell any part or the whole of said trust estate, and to reinvest the proceeds in such other property, subject to the above described trusts, as he and she shall deem most for the interest of her trust estate; and to appoint another trustee instead of the said James W. Lockett, whenever for any cause he shall cease to represent said trust; said trustee so appointed by her taking the said estate subject to the trusts hereinbefore expressed, which are identical with those which are expressed in the deed creating the trust estate represented by the said Lockett, made by L. N. Whittle and James T. Nisbet, commissioners of the Bond etate, and now of record in the office of the clerk of the superior court of Bibb county."

Defendant further alleged, by amendments to his plea, that plaintiff, his agent and attorney, knew before and at the time of the trade for the property that defendant was contracting for and would not have accepted any but a warranty deed to the premises, with covenant of warranty legally binding on the cestui que trust and the trust estate, as shown by the deed itself made by the trustee to defendant. The trustee was not authorized, either by the orders of the court or by the terms of the trust and his powers under the trust deed, to make to defendant a covenant of warranty binding the cestui que trust, and defendant did not know this at the time, but relied entirely and absolutely upon the statement and assurances of said agent and attorney of plaintiff (by whom the orders of court were drawn and secured)

that the title and deeds and power to make said deed in said
trustee were all right and straight and absolutely good, and
expressed the trade for the property as before set out in the
plea.    Furthermore, the petition to sell, etc., under which
the order of sale was passed, were not legally served on Fan-
nie Lockett, are not binding upon her, and do not give, in
connection with said deed, a good title to defendant.    He,
not being a lawyer, did not know anything about said orders
of court, what they should contain, how they should have
been served, how they were legally to be construed, and in
fact never saw them until recently.    He expected to employ
an attorney to examine the title for him and look into all
these matters, but was dissuaded from doing so after the
assurances and statements made to him by said agent and
attorney, and relied entirely and absolutely upon said assur-
ances and statements as to the title being absolutely good
and perfect; and it was known to plaintiff and said agent
and attorney at the time that he was no lawyer and was
incapable of investigating and passing upon such legal mat-
ters, and that he relied upon said agent and attorney's as-
surances and statements as to said title, order, etc.    About
the time the trade for the property was nearly completed,
said agent and attorney stated to defendant that the trustee
preferred that defendant should take a deed and give a
mortgage for the balance of the purchase money; and de-
fendant, being entirely ignorant of any legal difference it
might make to him whether he took a deed or bond for titles,
expecting in good faith to pay the balance of the purchase
money, and relying entirely and absolutely on said state-
ment and assurances of the agent and attorney that the
title was absolutely straight and good, accepted the deed
and executed the mortgage, which but for said statement
and assurances he would not have done, at least until he
had had the title examined by an attorney.    The deed to de-
fendant, though executed on June 18, 1891, was not de-
livered to him until January 4, 1892, nor was the trade

completed until that date; the order of court under which he bought the land and gave the mortgage, granted on the latter date, is very different from the order under which the deed was executed, for which reason the deed is defective and invalid; and this fact was not known to defendant until recently, long after the making of the deed and mortgage. The trustee had no authority to convey the property described in the mortgage, and did not by his deed put the title thereto in defendant, by reason of the want of authority and power so to do. The trustee did not have authority to bind the trust estate or the cestui que trust by covenant of warranty. It was not until a long time after paying the $2,500 and giving the mortgage that defendant discovered that the deed from the trustee did not put the title in defendant, and that the trustee did not have authority to execute a deed with covenant of warranty binding on the trust estate of the cestui que trust, or to make him a deed and title to the property, and that the title to the same had never vested in him; and had he known said facts before he bought the property and before he executed the mortgage and paid the money, he never would have done these things; and these facts were known to plaintiff, his agent and attorney, at the time he bought the property and gave the mortgage, and they constitute a fraud upon defendant for which he is remediless at law. Lockett is under no bond as trustee, was not appointed trustee by any court, and became such only by reason of the deed from the heirs. He and his agent and attorney knew at the time that defendant was contracting for, and would not have bargained for, bought and accepted any but a warranty deed and title with covenant of warranty legally binding on the cestui que trust and the trust estate; and defendant thought he was getting the same, relying as he did upon said assurances of the agent and attorney.

*Ryals & Stone*, for plaintiff in error.
*Hardeman, Davis & Turner*, contra.

COBB, Justice.

1. When a vendee seeks to avoid the payment of the purchase money of land in defense to a suit brought by the vendor against him, on the ground that the vendor had no title at the time the deed was executed, and where the vendee is in undisputed possession under such deed, it is encumbent upon him in his plea to set up such facts as would show that the vendor had no title. If there are several ways in which the vendor's title to the premises could have been acquired, a plea of want of title in defense to a suit for the purchase money would be fatally defective, if it failed to negative every fact which would be consistent with title in the vendor. The vendor might have title by a chain beginning with a grant from the State; or where the title originates with a municipal corporation, by a chain beginning with that corporation; or a title by possession and prescription. Therefore where the vendee pleads want of title, he must show, not only that his vendor did not have a complete paper title, but he must negative facts which would show title by prescription. In this case one of the defendant's pleas setting up want of title shows that the vendor did not have a complete chain of title, either from the State, or from the city of Macon, but did show conveyances to the vendor and his predecessors in title extending back to May 5, 1873. The plea did not allege that the vendor and his predecessors in title were not in possession under these deeds; and as possession consistent with them for the period between the date of the sale and May 5, 1873, would have made a good prescriptive title in the vendor, a plea failing to negative this fact was defective, and properly stricken on demurrer.

2. In the sale of land it is competent for the parties to contract for a title of a particular kind and character, although a title of a different character would be, under the law, good. In the absence of a stipulation for a particular kind and character of title, a good title, under the law, would

be held to be all that was contemplated by the parties to the contract. But if the parties stipulate for a title of a different kind, then they are bound by their stipulation, but it must clearly appear from the contract in what respect the title contracted for differs in kind and character from that considered good under the law. Therefore, it would be perfectly competent for the vendor and the vendee to stipulate that the title of the vendor should be such as would be pronounced good and merchantable by any reputable attorney in a named city. If the vendor or his agent represented at the time of the negotiation that the title would be of this character, or knew that the vendee was intending to purchase only upon condition that the title was of this character, then a failure to give to the vendee a title of the kind and character contracted for would be a defense to a suit for the purchase money. The pleas in this case fail to show that there was an express stipulation between the vendor's agent and the vendee for a title other than one which would be considered good and sufficient in law; and they further fail to show with sufficient clearness that the vendee intended to purchase only upon condition that a particular kind and character of title would be given, and that this intention was known to the vendor's agent so as to become a part of the contract. There was no error in striking the plea on demurrer, as the same did not allege anything which would show that the defendant's title would not be good under the law.

3. The character of warranty which the vendor would give to the vendee in the sale of land is a matter purely for stipulation, and if the vendor agrees at the time of the purchase to deliver to the vendee a deed which contains a warranty of a specified character, then a failure to give the warranty would be a sufficient reason for the vendee to refuse to receive the deed; but where it appears from the allegations in the plea setting up a failure on the part of the vendor to comply with his contract as to the warranty agreed

to be given, that the vendee accepted the deed with the warranty different from that which had been agreed upon, and went into possession, he could not afterwards, when sued for the purchase money, set up the fact that the deed failed to contain the warranty which had been contracted for. His acceptance of the deed and the possession under it would amount to a waiver of his right to complain in regard to this matter. While in this case it is probable that the warranty stipulated for, that is, one by the trustee which would bind the trust estate, could not be legally given, still as the vendee accepted the deed without the warranty, it is not necessary to decide the question as to whether a trustee can bind the trust estate by a covenant of warranty. He certainly cannot, without an order from the judge of the superior court authorizing it. *Shacklett* v. *Ransom*, 54 *Ga.* 350, 353.

*Judgment affirmed. All the Justices concurring.*