## BUNDAY et al. v. HUNTINGTON. †

### (Circuit Court of Appeals, Eighth Circuit.   July 2, 1915.)

### No. 4417.

**1. APPEAL AND ERROR ⬤◯1008—REVIEW—FINDING.**

It is only in the absence of any request to find facts specially, or to find for plaintiff in error generally, that a general finding by the court, sitting as a jury, has the effect of a general verdict.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3955–3960, 3962–3969;   Dec. Dig. ⬤◯1008.]

**2. APPEAL AND ERROR ⬤◯854—REVIEW—AFFIRMANCE.**

Where judgment was for the right party, it will be affirmed, though the wrong reason was assigned.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3403, 3404, 3408–3424, 3427–3430;   Dec. Dig. ⬤◯854.]

**3. BANKRUPTCY ⬤◯165—PREFERENCES—CONTRACTS—CONSTRUCTION.**

A contract of sale provided that the buyers should insure the property, which they were buying on installments, for the benefit of the sellers.   A subsequent chattel mortgage given to secure the sellers was more favorable in many respects than the contract, but it did not provide that the property should be insured for the sellers' benefit.   *Held*, that the sellers could not claim insurance upon the property, the chattel mortgage having superseded the executory contract of sale, and hence, the property having been destroyed by fire, a payment of the insurance money by the buyers, who were insolvent and known to be, to the sellers, constituted a preference.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 259, 260, 266;   Dec. Dig. ⬤◯165.]

**4. CONTRACTS ⬤◯170—CONSTRUCTION—CONSTRUCTION BY PARTIES.**

Where the parties to a contract for the sale of goods treated it as not requiring the buyers to insure the property for the sellers' benefit, such action constituted a practical construction to which effect will be given by the court.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 753;   Dec. Dig. ⬤◯170.]

Reed, District Judge, dissenting.

In Error to the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

Action by Fred G. Huntington, as trustee in bankruptcy of Gideon N. Carlson and Adolph P. Rosdahl, against Ansel E. Bunday and another.   There was a judgment for plaintiff, and defendants brings error.   Affirmed.

This is an action at law instituted by the defendant in error against the plaintiffs in error, who will be referred to herein as the "plaintiff" and "defendants," as they were in the court below, to recover an alleged preference.

The plaintiff is the trustee in bankruptcy of Carlson & Rosdahl, a mercantile firm, who had been in the retail mercantile business at Bruce, S. D., from April 14, 1909, to May 3, 1910.   On November 15, 1910, an involuntary petition in bankruptcy was filed against them, and they were adjudicated as bankrupts on December 2, 1910.   Thereafter the plaintiff was duly elected as trustee of the bankrupt estate.

It is charged in the complaint that on May 3, 1910, the stock of merchandise of the bankrupts was destroyed by fire, being covered by insurance; that on July 16, 1910, within four months of the filing of the petition in bankruptcy,

⬤◯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

† Rehearing denied September 27, 1915.

the bankrupts, being then indebted to the defendants, assigned and transferred to them the policies of insurance on the stock of merchandise and the amounts due them thereunder; that the defendants collected the amounts due from the insurers; that at the time of the transfer and assignment of these policies Carlson & Rosdahl were insolvent, which fact was known to the defendants, and this transfer, and the collection of the insurance money by the defendants, enabled them to obtain a greater percentage of their claim than any of the other creditors of the same class, and was intended as a preference.

The answer of the defendants, so far as it is necessary for a determination of the issues involved on this writ of error, is as follows:

The defendants allege that for many years prior to the 14th day of April, 1909, the defendants, Ansel E. Bunday and Frank F. Ribstein, were copartners under the firm name and style of Bunday & Ribstein, and were engaged in the general retail merchandising business at Bruce, S. D., and on said 14th day of April, 1909, owned a stock of general merchandise of the value of $8,107; and that on said 14th day of April, 1909, when the said G. N. Carlson and A. P. Rosdahl were solvent, and the aggregate of their property at a fair valuation was more than sufficient in amount to pay their debts, these defendants, as copartners aforesaid, made and entered into an agreement and contract in writing with the said Carlson & Rosdahl, in the names of G. N. Carlson and A. P. Rosdahl, respectively, wherein these defendants, among other things, agreed to sell to the said Carlson & Rosdahl the said stock of general merchandise, a copy of which said agreement and contract is hereto attached, marked "Exhibit A," and made a part hereof.

The defendants further allege that thereafter, and in pursuance of said contract, an invoice of stock of merchandise was taken by the parties thereto, and the invoice price and value of said stock of general merchandise was found to be the sum of $8,107, which amount was the true value thereof, and which amount was agreed upon between the parties thereto as the purchase price of said stock of merchandise, and that thereupon these defendants sold, transferred, and delivered the said stock of merchandise to the said Gideon N. Carlson and Adolph P. Rosdahl, for the said sum of $8,107.

The defendants further allege that thereupon and on or about the 26th day of April, 1909, relying upon and in pursuance of said agreement, these defendants sold said stock of merchandise to the said Carlson & Rosdahl, and the said Carlson & Rosdahl paid unto these defendants the sum of $3,000, as a part of the consideration for said stock of merchandise, and as evidence of the indebtedness for the balance of the consideration therefor the said Carlson & Rosdahl, on the said 26th day of April, 1909, executed and delivered to these defendants their certain promissory note wherein and whereby, on or before the 19th day of April, 1914, they promised to pay to the order of these defendants the sum of $5,107, with interest thereon at 6 per cent. per annum until paid, payable annually, a copy of which note is attached hereto, marked "Exhibit B," and made a part hereof.

The defendants further allege that on said 26th day of April, 1909, in pursuance of said contract, the said Carlson & Rosdahl, in their individual names, as additional security for the payment of said promissory note, executed and delivered unto these defendants their certain chattel mortgage, a copy of which is attached hereto, marked "Exhibit C," which mortgage was on the 27th day of April, 1909, filed for record in the office of the register of deeds in and for Brookings county, S. D.

The defendants further allege that thereafter and in pursuance of said agreement, and in compliance with the terms of said chattel mortgage, the said Carlson & Rosdahl replenished said stock of merchandise and kept the value thereof in excess of $8,107, and accounted to these defendants for the sales made by them from said stock of merchandise from time to time, and paid to these defendants the following amounts at the times herein stated; the same being 15 per cent. of the sales of merchandise so made by them under said contract and chattel mortgage, to wit: June 3, 1909, $213.60; July 6, 1909, $156.45; August 6, 1909, $136.50; September 8, 1909, $105.75; October 9, 1909, $180.00; December 10, 1909, $255.00; January 3, 1910, $165.00; March 2, 1910, $161.25—making a total sum of $1,373.55 so paid by them and

received by these defendants prior to the time when said stock of merchandise was destroyed by fire, on the said 3d day of May, 1910, and at said time the said Carlson & Rosdahl were so indebted for and on account of the sale of said stock of merchandise by these defendants to them, and by reason of the said contract and the note and chattel mortgage hereinbefore described, in the sum of $3,733.45, with interest as provided by said promissory note, contract, and chattel mortgage, and these defendants allege that at all times prior to the said 3d day of May, 1910, the said Gideon N. Carlson and Adolph P. Rosdahl, as copartners, and as individuals, were solvent, and that the aggregate of their property at a fair valuation was more than sufficient in amount to pay their debts, and that if they became or are insolvent they so became and are insolvent only by reason of the destruction of said stock of merchandise by the said fire on said 3d day of May, 1910.

The defendants further allege that in and by said contract, and as a part of the consideration for the sale of the said stock of merchandise by these defendants to the said Carlson & Rosdahl, it was agreed by the parties thereto that the said Carlson & Rosdahl should insure said stock of merchandise in favor of these defendants to the amount of $5,000, and that it was the intention and understanding of said Carlson & Rosdahl and of these defendants that the said Carlson & Rosdahl, as a part of the consideration for the said sale, and as additional security for the purchase price of said stock of merchandise, should keep said stock of merchandise insured against loss by fire, to the amount of $5,000, with the loss, if any, payable to these defendants, as mortgagees, so far as their interests might appear, and that in pursuance of said contract, and in accord with the intentions and understanding of the parties thereto, the said Carlson & Rosdahl procured the insurance hereinbefore mentioned, and that it was the intention and understanding of said Carlson & Rosdahl, and these defendants, that the said insurance so procured and issued upon said stock of merchandise was in compliance with said contract, and that the same was so issued in favor of these defendants, but through inadvertence, oversight, and mistake, all of said policies of insurance so issued were taken in the name of said Carlson & Rosdahl, and the loss, in case of fire, made payable to said Carlson & Rosdahl, instead of in the name of these defendants as intended and understood between the parties to said agreement.

### Contract of Sale.

This agreement made and entered into this 14th day of April, 1909, by and between A. E. Bunday and F. F. Ribstein, copartners, doing business under the firm name and style as Bunday & Ribstein, parties of the first part, and G. N. Carlson and A. P. Rosdahl, parties of the second part, witnesseth:

That said Bunday & Ribstein in consideration of the covenants hereinafter contained, will sell to said parties of the second part all of their stock of goods, wares and merchandise of every kind, character and description now being in their store, situated on lots 18 and 19, block 6, of the original plat of the town of Bruce, Brookings county, South Dakota, according to an invoice to be hereafter made by the parties hereto.

The parties of the second part shall pay for the same as follows:

For all dry goods, including hats, caps, notions, overcoats, shirts and overalls, etc., invoice price with a discount of twenty per cent., two per cent. to be added for freight.

For all boots, shoes and rubbers, ten per cent. discount, with two per cent. added for freight.

For all groceries, including crockery, glassware and stoneware, and all other articles carried in the grocery department, net invoice price with two per cent. added for freight.

Both parties agree to deposit in the Bank of Bruce the sum of two hundred dollars each, making the whole amount four hundred dollars, to be forfeited by either party not living up to this contract.

In consideration hereof, the party of the second part agrees to pay the party of the first part the sum of $3,000 in cash, the balance by note, bearing 6 per cent. interest secured by first mortgage on the whole stock of goods, said

note to be payable on or before the 14th day of April, 1914, with a provision in said mortgage and note that fifteen per cent. of the amount of the sales of said goods shall be applied on said notes on the first day of each month until the same is fully paid or until such time when the same shall become due and payable in full.

It is further agreed by and between the parties hereto, that the stock in said store shall not be reduced more than two thousand dollars in value of the stock of goods now on hand, and that no goods shall be sold except in the ordinary course of retail trade as shall be provided for in said mortgage, the parties of the first part further agree to lease real estate hereinbefore described to the parties of the second part to the 14th day of April, 1914, for the monthly rent of twenty-five dollars, to be paid in advance on the first day of each month, a written lease in the usual form to be executed by the said parties of the first part.

The parties of the first part do also lease the fixtures in said building for said period.

It is further agreed that the parties of the second part shall insure said stock of goods to the amount of five thousand dollars in favor of the parties of the first part.

It is further agreed that the fixtures and the inside room or rooms of said building shall be kept in repair by the parties of the second part, and that the parties of the first part shall have a ten per cent. discount on all goods purchased by them during the period of said lease.

### Chattel Mortgage.

Know all men by these presents:

This mortgage, made the 26th day of April, in the year, A. D. 1909, by G. N. Carlson and A. P. Rosdahl, in the county of Brookings, state of South Dakota, by occupation merchants, mortgagor, to A. E. Bunday and F. F. Ribstein, by occupation merchants, mortgagee, witnesseth: That said mortgagor, being justly indebted to said mortgagee, in the sum of $5,107.00, which is hereby confessed and acknowledged, have for the purpose of securing the payment of said debt, granted, bargained, sold and mortgaged, and by these presents do grant, bargain, sell and mortgage unto said mortgagee and their assigns, all that personal property described as follows, to wit: All of the goods, wares and merchandise of every kind consisting chiefly of dry goods, hats, caps, notions, overcoats, shirts, overalls and other goods kept in a dry goods store, and also boots, shoes and rubbers, and all groceries, including crockery, glassware and stoneware, and all goods and articles of merchandise now contained in a certain building situated on lots eighteen and nineteen of block six of the original plat of the town of Bruce, Brookings county, South Dakota, and also all new goods and articles of merchandise, which shall be hereafter purchased by the said mortgagors and kept in connection with said stock in replenishing or adding to the said stock of goods.

It is further agreed that the said mortgagors may remain in possession and conduct said store and sell said goods in the ordinary course of retail trade, and that the said mortgagors shall make daily deposits of all moneys and proceeds from said sales, and shall on the first day of each month make a just and true account to the mortgagees of all sales made, and that proceeds of all sales shall on the first day of each month be applied to the extinguishment of the mortgage indebtedness mentioned herein, provided that out of said proceeds the mortgagors shall replenish the said stock of goods and keep the said stock of goods at its present value, provided further that if the said stock of goods be reduced below its present value of $8,107.00, all of the proceeds of such sales shall be applied to the extinguishment of the mortgage indebtedness, and provided further that at no time shall less than fifteen per cent. of the monthly sales be applied to the payment of this mortgage.

All the said property being now in the possession of said mortgagor, in the county of Brookings, and state aforesaid, and is free from all incumbrance.

To have and to hold all and singular, the personal property aforesaid, forever as security for the payment of the note and obligation hereinafter described, provided always, that these presents are upon this express condition. That if the said mortgagor shall pay or cause to be paid unto the said mort-

gagee, their executors, administrators or assigns, the sum of five thousand one hundred and seven dollars according to the conditions of one certain promissory note payable to A. E. Bunday and F. F. Ribstein, for $5,107.00, dated April 26, 1909, due April 14, 1914, with interest at six per cent. per annum until paid.

Then these presents to be void and of no effect. But if default should be made in the payment of said sum of money or the interest thereon, at the time said note shall become due, or if any attempt shall be made to dispose of or injure said property or to remove said property from said county of Brookings or any part thereof by the mortgagor or any other person, or if said mortgagor do not take proper care of said property, or if said mortgagee shall at any time deem themselves insecure. Then, thereupon and thereafter it shall be lawful, and the said mortgagor hereby authorizes said mortgagees, their executors, administrators or assigns or their authorized agent to take said property, wherever the same may be found, and hold or sell and dispose of the same and all equity of redemption, at public auction, with notice as provided by law, and on such terms as said mortgagee or  *  *  *  agent may see fit, and the said mortgagee may become the purchaser of said property at said sale, retaining such amount as shall pay the aforesaid note and the interest thereon, and an attorney's fee of $10.00 and such other expenses as may have been incurred, returning the surplus money, if any there be, to said mortgagor or their assigns, and the said mortgagor hereby waives demand and personal notice of the time and place of sale. And as long as the conditions of this mortgage are fulfilled, the said mortgagor to remain in possession of said property, and in consideration thereof they agree to keep said property in as good condition as it now is, at their own cost and expense.

They also pray in their answer: "That these defendants be found, adjudged, and decreed to have been the equitable owners of the stock of merchandise mentioned and described herein, and of the insurance policies issued upon said stock by the insurance companies herein mentioned and described, and of the proceeds derived from such insurance policies."

By written stipulation a trial by jury was waived and the court made a general finding in favor of the plaintiff on all the issues and rendered judgment in his favor. The defendants asked the court to make a number of special findings, which the court refused to make, and proper exceptions were preserved to his refusal.

The special findings asked by the defendants, so far as they are material to the determination of this cause, and which were the only ones presented to the court in the briefs and oral argument of counsel for the defendants, are:

(4) That as a matter of law and in equity, under said contract, Bunday & Ribstein acquired an equitable lien upon said fire insurance and the policies so obtained by Carlson & Rosdahl, to the extent of their interest in said stock of goods under their note and chattel mortgage, which, at the time of the fire, was about $3,700.

(6) That in order to facilitate the collection of the amount of the insurance to the extent of their interest therein, and upon which the defendants had said equitable lien, certain written orders were given by Carlson & Rosdahl to the defendants on or about July 16, 1910, directing the following insurance companies to pay the amount of the loss as adjusted to these defendants, to wit: The Merchants' Mutual Fire Insurance Company of Redfield, S. D.; the Druggists' Mutual Fire Insurance Company of Lake Preston, S. D.; the South Dakota Mutual Fire Association, of Aberdeen, S. D.; and the Retail Merchants' Fire Insurance Company, of Sioux Falls, S. D. The face value of which policies for $4,500, but the amount at which the losses had previously been adjusted thereon was $3,328.34, being less than the amount of the balance due to defendants under said note and mortgage. That said orders were given pursuant to said contract of April 14, 1909, and the rights of the defendants to said insurance related back to the date of said contract, note, and mortgage. And that such equitable lien upon said insurance and insurance policies and the proceeds thereof is a valid lien acquired in good faith and superior to any claims of the plaintiff as trustee.

Philo Hall, of Brookings, S. D. (J. P. Alexander and Wallace E. Purdy, both of Brookings, S. D., on the brief), for plaintiffs in error.

H. H. Flor, of St. Paul, Minn. (A. E. Boyesen, of St. Paul, Minn. and Chas. O. Bailey and John H. Voorhees, both of Sioux Falls, S. D., and M. E. Culhane, of Brookings, S. D., on the brief), for defendant in error.

Before ADAMS, Circuit Judge, and TRIEBER and REED, District Judges.

TRIEBER, District Judge (after stating the facts as above).    [1] While the court, sitting as a jury, made only a general finding of all the issues in favor of the plaintiff, the request for special findings made on behalf of the defendants, and which was by the court refused, and proper exceptions saved, enables us to review the evidence for the purpose of determining whether it was of such a nature as to make it the duty of the court to make these findings, and whether the refusal to do so is reversible error.

It is only in the absence of any request to find facts specifically, or to find for the plaintiff in error generally, that a general finding by the court, sitting as a jury, has the effect of a general verdict by a jury. National Surety Co. v. United States, for use, etc., 200 Fed. 142, 118 C. C. A. 360. As the defendants, the plaintiffs in error, requested special findings, which, if made by the court, would entitle them to a judgment, it is our duty to examine the evidence for the purpose of determining whether the court erred in refusing to make these findings, or such of them as would entitle the defendants to a judgment in their favor.

It will be noticed that the findings asked by the defendants are really in the nature of conclusions of law. There were other requests for findings of facts made by the defendants which, in view of the conclusions reached by us, it is unnecessary to notice in this proceeding.

[2] If, upon an examination of all the evidence, the judgment of the trial court was for the right party, it is the duty of the appellate court to affirm it, even if a wrong reason was assigned therefor. Latting v. Owasso Mfg. Co., 148 Fed. 369, 78 C. C. A. 183. The insolvency of the bankrupts at the time this transaction took place, and that the defendants had reasonable cause to know that fact, is not disputed.

[3] The original contract made on April 14, 1909, between the defendants and the bankrupts, provided for a mortgage to secure the unpaid purchase money, amounting to $5,000, on the stock of goods sold, and that 15 per cent. of the amounts realized from sales of said goods should be applied on the note; that this 15 per cent. should be paid by the bankrupts to the defendants on the 1st day of each month until the same is fully paid or until such time when the note shall become due and payable in full. It also contains a provision that the bankrupts shall insure said stock of goods to the amount of $5,000; also, that "the stock in said store shall not be reduced more than $2,000 in value of the stock of goods now on hand, and that no goods shall be sold except in the ordinary course of retail trade, as shall be provided in said mortgage." The note was to become due five years after date.

Each of the parties was to deposit in the Bank of Bruce, S. D., $200 to be forfeited by either party "not living up to this contract."

The trade was finally consummated on April 26, 1909, $3,000 being paid in cash and a note for $5,107 executed by the bankrupts, and the mortgage, hereinbefore set out, executed by them for the purpose of securing the note for the unpaid purchase money.

It will be noticed that the mortgage differs in several material respects from the agreement, and is much more favorable to the defendants than the terms of the original contract entitled them. It contains every obligation agreed to be assumed by the bankrupts under the contract except the promise to insure the stock of goods for the benefit of the defendants. It contains the following provisions not required of them in the executory contract:

While the contract only requires a mortgage on the goods sold, the mortgage includes all after-acquired goods of the bankrupts. Under the contract only 15 per cent. of the amount of the sales of "said goods" was to be applied to the payment of the note on the 1st day of each month, and that the stock of goods should not be reduced more than $2,000 in value of the stock now on hand, the mortgage provides that:

"The mortgagors shall make daily deposits of all moneys and proceeds from said sales, and shall on the first day of each month make a just and true account to the mortgagees of all sales made, and the proceeds of all sales shall on the first day of each month be applied to the extinguishment of the mortgage indebtedness mentioned herein, provided, that out of said proceeds the mortgagors shall replenish the said stock of goods and keep the said stock of goods at its present value; provided further, that if the said stock of goods be reduced below its present value of $8,107.00 all of the proceeds of such sales shall be applied to the extinguishment of the mortgage indebtedness, and provided further, that at no time shall less than 15 per cent. of the monthly sales be applied to the payment of this mortgage."

The mortgage therefore varies in several respects from the contract, and is much more favorable to the defendants, but, as before stated, omits the obligation on the part of the mortgagors to insure the goods for the benefit of the mortgagees. Assuming, without deciding, that the provision to insure contained in the contract gave the defendants an equitable lien on the proceeds of the insurance policies, and that this equitable lien is superior to the rights of the plaintiff as trustee in bankruptcy, although the mortgage, which was of record (the contract was not recorded), fails to show it, the judgment of the court is, in our opinion, correct. Whenever an executory contract is executed by a new contract in writing, the latter is presumed to express the final agreement of the parties, and conditions in the former agreement not included in the last, nor reserved or continued by its terms, are, in the absence of fraud, or mistake, deemed waived. And this is especially true when the last contract is more favorable to the party complaining than was the preliminary contract. Andrus v. St. Louis Smelting Co., 130 U. S. 643, 647, 9 Sup. Ct. 645, 32 L. Ed. 1054; American Colortype Co. v. Continental Colortype Co., 188 U. S. 104, 108, 23 Sup. Ct. 265, 47 L. Ed. 404; Grand Trunk W. Ry. Co. v. Chicago, etc., R. R. Co., 141 Fed. 785, 73 C. C. A. 43; Wheeden v. Fiske, 50 N. H. 125; Ford

v. Smith, 25 Ga. 679; Ellis v. Lockett, 100 Ga. 719, 28 S. E. 452; Parmly v. Buckley, 103 Ill. 119; Slocum v. Bracy, 55 Minn. 249, 56 N. W. 826, 43 Am. St. Rep. 499; Hubachek v. Brown's Estate, 126 Minn. 359, 148 N. W. 121; Keator v. Colorado Coal, etc., Co., 3 Colo. App. 188, 32 Pac. 857.

[4] In addition to this, the construction of the mortgage by both parties evidently was that there was to be no insurance for the benefit of the mortgagees; for, although more than a year had elapsed since the execution of the mortgage, none of the insurance policies were made for the benefit of the defendants, but all were made payable to the bankrupts. This was a practical construction of the last contract by the parties and will be given effect by the courts, even if there was an ambiguity. Barber Asphalt Paving Company v. City of St. Paul, 224 Fed. 842, —— C. C. A. ——, decided at the present term of this court.

The judgment is affirmed.

REED, District Judge (dissenting). I am unable to concur in the conclusion reached in the foregoing opinion.

By the agreement of April 14th, the bankrupts agreed on completion of the sale to give the defendants a chattel mortgage upon the stock of merchandise purchased by them from the defendants as security for the purchase price thereof, and to keep such stock insured in the sum of $5,000 for the benefit of the defendants. April 26th, a mortgage was made pursuant to that agreement in which, however, some changes were made in regard to sales to be made by the bankrupts in the ordinary course of their business, satisfactory to the parties and presumably for their mutual benefit. The agreement to keep the property insured was not carried into the mortgage, and does not require that it shall be. The bankrupts took possession of the property upon the execution of the mortgage and began and continued the sale thereof at retail in the ordinary course of their business as agreed, adding to the stock by the purchase of other merchandise from time to time as it was reduced by such sales, until May 3, 1910, when the property was destroyed by fire. When the chattel mortgage was made the bankrupts were solvent; it was made in good faith to secure the indebtedness of the bankrupts to the defendants for the purchase price of the property. After the mortgage was made, the bankrupts, as they had agreed in the contract of April 14th, insured the property in an amount in excess of $5,000 but took the policies in their own name. In due time the loss was adjusted and the bankrupts gave to the defendants an order upon the insurance companies for some $3,300 of the insurance money to apply upon their indebtedness to the defendants for the purchase price of the merchandise, which amount was paid to the defendants by the insurance companies July 16, 1910. November 15, 1910, an involuntary petition in bankruptcy was filed against the mortgagors upon which they were in due time adjudicated bankrupts, and the plaintiff Huntington appointed as their trustee, who brought this suit and was permitted to recover from the defendants the amount of the insurance so received by them, upon the alleged ground that it was a voidable

preference under the Bankruptcy Act of July 1, 1898, c. 541, 30 Stat. 544.

The transaction between the defendants and the bankrupts arose prior to the amendment of the Bankruptcy Act on June 25, 1910 (Act June 25, 1910, c. 412, 36 Stat. 839). No actual fraud is alleged and none was attempted to be proven. Prior to that amendment it had been frequently held by the Supreme Court that trustees in bankruptcy succeed only to the rights of the bankrupt in the property of his estate in cases unaffected by fraud. Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577; Humphrey v. Tatman, 198 U. S. 91, 95, 25 Sup. Ct. 567, 49 L. Ed. 956; York Manufacturing Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782. In Thompson v. Fairbanks, the court, at page 526 of 196 U. S., at page 310 of 25 Sup. Ct. (49 L. Ed. 577), said:

"Under the present Bankrupt Act, the trustee takes the property of the bankrupt, in cases unaffected by fraud, in the same plight and condition that the bankrupt himself held it, and subject to all the equities impressed upon it in the hands of the bankrupt, except in cases where there has been a conveyance or incumbrance of the property which is void as against the trustee by some positive provision of the act."

See Mitchell v. Winslow, 2 Story, 630, 17 Fed. Cas. 527, No. 9673, applying this rule to an insurance policy.

Under the agreement of April 14th, upon the completion of the sale and the execution and recording of the chattel mortgage the defendants acquired not only a valid lien upon the mortgaged property, but also under the statute of South Dakota, and the settled principles of equity, an equitable lien upon the insurance on the mortgaged property.

The Civil Code of South Dakota (1903) provides as follows:

"Sec. 2022. A lien is created: (1) By contract of the parties; or (2) by operation of law. * * * *"

"Sec. 2024. An agreement may be made to create a lien upon property not yet acquired by the party agreeing to give the lien, or not yet in existence. In such case the lien agreed for attaches from the time when the party agreeing to give it acquires an interest in the thing to the extent of such interest.

"Sec. 2025. A lien may be created by contract, to take immediate effect, as security for the performance of obligations not then in existence." Iverson v. Soo Elevator Co., 22 S. D. 638, 119 N. W. 1006; Grand Forks Nat. Bank v. Minneapolis, etc., Elevator Co., 6 Dak. 357, 43 N. W. 806; Wheeler v. Insurance Co., 101 U. S. 439, 25 L. Ed. 1055; Ketchum v. St. Louis, 101 U. S. 306, 318, et seq., 25 L. Ed. 999; Walker v. Brown, 165 U. S. 654, 17 Sup. Ct. 453, 41 L. Ed. 865; Hurley v. Atchison, T. & S. F. Ry. Co., 213 U. S. 126, 29 Sup. Ct. 466, 53 L. Ed. 729; Sexton v. Kessler, 225 U. S. 90, 32 Sup. Ct. 657, 56 L. Ed. 995; In re Ozark Cooperage Co., 180 Fed. 105, 103 C. C. A. 603 (this court); In re Sturtevant, 188 Fed. 196, 110 C. C. A. 68 (C. C. A. 7th Circuit); In re Bird (D. C.) 180 Fed. 229; Miller v. Aldrich, 31 Mich. 408; Cromwell v. Brooklyn Ins. Co., 44 N. Y. 42, 4 Am. Rep. 641.

And such lien or equity is not impaired by the amendment of June 25, 1910, to section 47a (2) of the Bankruptcy Act, giving to the trustee "as to all property coming into the custody of the court of bankruptcy, the rights of a creditor holding a lien." Holt v. Henley, 232 U. S. 637, 34 Sup. Ct. 459, 58 L. Ed. 767.

The property in controversy herein, the insurance fund, never came into the custody of the court of bankruptcy.

In Wheeler v. Insurance Co., above (101 U. S. 439, 25 L. Ed. 1055), it appears that Johnson & Goodrich, commission merchants, being creditors of one Green for advances made to him, suggested to him that he should authorize them to effect insurance upon his buildings and other property for their better security. Green accordingly wrote them, authorizing them to effect such insurance, and they did procure from the defendant insurance company a policy in their own names for $5,500. Before the expiration of the policy, the property was destroyed by fire, and Johnson & Goodrich took measures to recover the insurance, which amounted to some $3,500 in excess of the amount due upon their advances. Wheeler & Co. intervened, and in equity claimed the insurance money as against the insurance company, Green, and Johnson & Goodrich. The defendants severally answered, and upon the hearing the court dismissed the bill, from which decree Wheeler & Co. appealed. It appeared upon the hearing that prior to the employment by Green of Johnson & Goodrich as his commission merchants, he had employed the firm of Foster & Gwyn as such, had become largely indebted to them, and gave them his notes secured by mortgages upon the same property mortgaged to Johnson & Goodrich, with an agreement in some of the mortgages to insure the buildings and machinery, and to transfer the policies to the mortgagees for their better security, or in default of doing this that the mortgagees and all subsequent holders of the notes secured by those mortgages should have the right to effect such insurance at his expense. These mortgages were all given and recorded before Johnson & Goodrich procured their insurance upon the property. Foster & Gwyn under the reserved right contained in their mortgage effected insurance for one year upon the buildings and machinery, but did not renew the same, and after it had expired the property was destroyed. Foster & Gwyn being largely indebted to Wheeler & Co. transferred to them the notes and mortgages by way of collateral security, and upon this security Wheeler & Co. made their claim for the insurance money upon two grounds: (1) That the insurance was effected in the name of Johnson & Goodrich, merely as agents of Green; and (2) upon the ground that when the insurance in question was about to be renewed by Foster & Gwyn they were assured by Green and by Johnson & Goodrich that the Johnson & Goodrich insurance was effected for their (Foster & Gwyn's) benefit. The Supreme Court held against Wheeler & Co. upon each of these grounds; but Mr. Justice Bradley, speaking for the court, said at page 442 of 101 U. S. (25 L. Ed. 1055):

"But as the debt due to Johnson & Goodrich will not exhaust the whole amount of the insurance, and as the balance rightfully belongs to Green, the question arises whether, as to that balance, the claim of the appellants is not maintainable. It is undoubtedly the general rule that a mortgagee has no right to the benefit of a policy taken by the mortgagor, unless it is assigned to him. * * * But it is settled by many decisions in this country that, if the mortgagor is bound by covenant or otherwise to insure the mortgaged premises for the better security of the mortgagee, the latter will have an equitable lien upon the money due on a policy taken out by the mortgagor to the extent of the mortgagee's interest in the property destroyed. (Citing the cases.) And this equity exists, although the contract provides that in case of

the mortgagor's failing to procure and assign such insurance, the mortgagee may procure it at the mortgagor's expense."

In Cromwell v. Brooklyn Insurance Co., above (44 N. Y. 42, 4 Am. Rep. 641), it appeared that Cromwell was the assignee of a contract for the purchase of the lot in question from one Chesley. Chesley by the terms of the agreement was to build a house on the lot and convey it to one Eichenlaube, who was to insure the house for the benefit of Chesley. He did at first procure insurance in his name, which by the terms of the policy was payable to Chesley. When that policy expired the company refused for some reason to renew it. Eichenlaube then took out another policy in his own name, which contained no specifications that the loss, if any, was payable to Chesley or the plaintiff. The court said:

"But, in the absence of any proof to the contrary, it must be inferred that he made the insurance in pursuance of his agreement, and for the benefit of his vendor. And such, undoubtedly, would have been the legal inference, no matter what may have been his secret intention when he effected the insurance, provided he did it while in possession of the premises, and while the agreement between him and Chesley was binding, either in law or equity."

But it is said that because the agreement of April 14th, to keep the property insured for the benefit of the defendants, was not incorporated in the chattel mortgage, it was waived by the parties. The testimony shows, however, without any dispute, that the bankrupts procured the insurance upon the mortgaged property intending it for the benefit of the defendants; for after the mortgage was made the defendants inquired of the bankrupts if they had procured the insurance, and were informed by them that they had; and upon the adjustment of the loss the right of the defendants to the insurance money was clearly recognized by the bankrupts giving to them an order or orders upon the insurance companies for the amount of the insurance received by the defendants; and the bankrupts testified that they gave the defendants such orders because by their agreement to keep the property insured they understood the defendants were entitled thereto to the extent of their indebtedness against the bankrupts. If there was any doubt of the intention of the parties that the defendants were to have the benefit of the insurance to the extent of their indebtedness, the order given by the bankrupts upon the insurance companies therefor seems conclusive of the understanding of the parties, and the interpretation by them of their agreement should not be disturbed at the instance of the trustee, who stands only in the shoes of the bankrupts that he may recover this amount of this insurance for other creditors.

In Metropolitan National Bank v. Benedict Co., 74 Fed. 182, page 185, 20 C. C. A. 377, page 379, Judge Caldwell, speaking for this court, said:

"Moreover, parties have the undoubted right to make their own contracts, and to put their own construction upon them, and to regulate their rights and liabilities thereunder. If the court 'leaves the parties to be governed by their understanding of their own language, it, in effect, enforces the contract as actually made. That they should be so permitted to construe their own agreement accords with every principle of reason and justice.' * * * And when

both parties to a contract, acting in good faith, are agreed as to its meaning and their rights under it, a stranger having no interest in the subject-matter of the contract cannot insist that a different interpretation shall be put upon it, or compel the parties to put that interpretation upon it which will benefit him."

In Hubachek v. Brown's Estate, 126 Minn. 359, 148 N. W. 121, cited by the majority, the agreement involved was by its plain terms a condition precedent to the completion of the purchase. The acceptance of the deed without exacting a compliance with such condition was necessarily a waiver thereof by the grantee. The ruling of the court in that case, as stated in the opinion, applies only to stipulations that are expressly made conditions precedent to the performance of the contract, and does not necessarily apply to stipulations or agreements that are not conditions precedent, citing Taylor v. Railroad Co., 27 S. D. 528, 132 N. W. 152; and see De Rue v. McIntosh, 26 S. D. 42, 127 N. W. 532, and cases there cited, and McDonald v. Daskam, 116 Fed. 276, 53 C. C. A. 554.

The insurance agreement in this case is in no sense a condition precedent to the completion of the contract of April 14th, but is an independent collateral agreement to insure the property for the defendants' benefit; is not required to be in writing and is in no way inconsistent with the terms of the sale or of the chattel mortgage. Upon taking out the insurance policies, some time prior to the fire, an equitable lien at once attached thereunder to the insurance upon the property, which entitled the defendants to the insurance money to the extent of their interest in the property immediately upon its destruction by fire, which was May 3, 1910. McDonald v. Daskam, 116 Fed. 276, 53 C. C. A. 554; Grand Forks National Bank v. Minneapolis, etc., Elevator Co., 6 Dak. 357, 43 N. W. 806. As this was more than four months prior to the bankruptcy, the defendants are entitled to the insurance money received by them as against the plaintiff. McDonald v. Daskam, 116 Fed. 276, 53 C. C. A. 554, above.

Some question is made in the argument in behalf of the plaintiff that, as the mortgage covered after-acquired property which is not a part of the contract of April 14th, the insurance will not attach to such property. But the insurance company did not object to this and it is not for the plaintiff to do so. The question of the validity of a chattel mortgage covering after-acquired property is not open to discussion under the statute of South Dakota. Iverson v. Soo Elevator Co., 22 S. D. 638, 119 N. W. 1006; Grand Forks National Bank v. Minneapolis, etc., Elevator, 6 Dak. 357, 43 N. W. 806, above. And see Mitchell v. Winslow, 2 Story, 630, 17 Fed. Cas. 527, No. 9673.

This case upon its facts is so materially different from Long v. Farmers' Bank, 147 Fed. 360, 77 C. C. A. 538, 9 L. R. A. (N. S.) 585, and In re Great Western Manufacturing Co., 152 Fed. 123, 81 C. C. A. 341, that the decision in those cases is not applicable here.

I reach the conclusion that the judgment of the District Court should have been for the defendants, and as it was not it should be reversed.